## The Danbury and Norwalk Railroad Company *vs.* Wilson.

It was provided, by the fourteenth section of the charter of a railroad corporation, granted in 1835, that such charter was to become void, "If said company shall not expend the sum of fifty thousand dollars upon said railroad, or way, within four years after the passage of this act." Nothing having been done under such charter, the legislature, in 1846, passed a resolution, by which it was renewed, and which provided, that if said company should not expend the sum of $50,000, upon said railroad, as was prescribed in said fourteenth section of the original charter, within two years from the rising of the general assembly, at which said resolution was passed, or if they should not complete and put in operation a single, double or treble way, as authorized in said charter, within four years after the rising of said general assembly, then the rights, privileges and powers of said corporation should be null and void. Held, that said company were required both to expend said sum of $50,000, and to complete their said road, within the times respectively provided therefor.

Where, however, after more than two years from such rising of the legislature, no part of said $50,000 having been expended, and previous to the session of the legislature of 1850, there were subscriptions to the stock of said company, by the defendant and others, severally, and said company was organized and directors chosen, of whom the defendant was one, and, subsequent to such organization, the legislature, in 1850, again revived and renewed said charter, and extended the time limited in said fourteenth section, and after such renewal, a meeting of the stockholders was convened by the commissioners, in which the defendant took part, and at which a director was chosen, in the place of one who had resigned, and six new additional directors were chosen, and at a subsequent meeting of the directors, on the same day, at which the defendant was present, an installment was laid on the stock subscriptions: it was held, that such notice of the commissioners, the meeting of the stockholders, and the choice of directors, amounted to an acceptance of the charter, as renewed in 1850, and was a recognition and confirmation of all the preceding steps, which resulted in the organization of said company, and constituted a new organization, as at the time of said last meeting.

In an action to recover unpaid assessments upon shares of the stock of a railroad company, where it appeared, that the defendant was a party to, and co-operated actively with, other subscribers, and the commissioners, in the organization of the corporation, and participated in all the proceedings which led to it,—was one of the earliest and largest subscribers to the stock, and induced others to subscribe to it,—accepted the office of director, and acted as such, in the meetings of the directors, and in the meetings at which the installments were laid, and the time of payment thereof extended; it was held, that he was precluded from disputing the validity or regularity of the steps taken in the organization of the plaintiffs, as a corporation.

The Danbury and Norwalk Railroad Company *v.* Wilson.

By subscribing to the stock of a railroad corporation, on the terms mentioned in the charter, and the allowance of the shares subscribed for, the relation of stockholder and company is created, from which the law implies a promise, by such subscriber, to pay installments ordered by the directors, pursuant to the charter.

It is not a sufficient reason for refusing to pay such installments, that the corporation was not organized, until after the defendant had subscribed for such shares.

The title which a party acquires to the shares in a corporation, subscribed for by him, is a good consideration for an express promise, on his part, to pay assessments, legally laid thereon.

Where the whole amount of stock subscribed for, in a railroad corporation, did not exceed the capital to be raised, and the commissioners received a subscription to the stock, from the defendant, and assented to his acting as a stockholder, in the meetings of the corporation ; it was held, that a formal assignment by the commissioners, of shares subscribed for by the defendant, was not necessary.

Where a vote of the directors of such corporation, requiring installments, directed that they should be paid, at the times therein designated, but did not, in terms, make them payable to the treasurer of such corporation ; it was held, that the import of such vote was, that said installments were payable to the treasurer, he being the proper officer to receive and keep the moneys of the corporation.

The design of the provision of the general railroad act, " That the president and directors of railroad corporations may direct the assessments on the shares to be paid to the treasurer, in such manner and with such notice as may be prescribed, by the by-laws of said corporation," was not to make the mode of notice, therein mentioned, exclusive of all others. And, therefore, where such corporation never passed any by-law, prescribing the mode of such notice, and at the meeting of the directors, of whom the defendant was one, and at which he was present, and acted, laid an assessment, and directed the treasurer to give notice to the stockholders, by advertising in a newspaper, published in the town where the defendant resided ; it was held, that the defendant had waived the right to claim, that a by-law should be passed, prescribing the mode of notice.

The sale of the shares of a delinquent stockholder, in a railroad corporation, to pay over-due assessments, upon such shares, is no defence to an action against him, to recover the deficiency.

Such corporation having located their railroad according to law, afterwards, for a short distance, altered such location, the requisite steps being taken as to such substituted portion : held, that such alteration furnished no defence to a stockholder, in an action against him, to recover assessments on his stock.

An agreement between the defendant and a third person, by which the former guaranteed to the latter, dividends, equal to six per cent. per annum, on

his stock, and the latter agreed to subscribe for said stock, is admissible in evidence, for the purpose of showing, that the defendant procured others to subscribe to the stock of such company, and the inducements which he held out for that purpose.

THIS was an action of *assumpsit*, brought by a railroad corporation, to recover the amount of certain assessments upon shares of the stock of such corporation, held by the defendant, as an original subscriber.

The cause came on for trial, before the jury, at the term of the superior court, holden in April, 1853, at Danbury.

The plaintiffs claimed to exercise corporate powers, under a charter granted by the general assembly of this state, in May, 1835, incorporating "the Fairfield County Railroad Company, for the purpose of constructing a railroad, from some suitable point in the town of Danbury, by the most direct and feasible route, to some suitable point, at tide-water, either in the town of Fairfield, or the town of Norwalk, as shall· be hereafter determined." It was provided by the charter, that the capital stock of said company should be $200,000,. with the privilege of increasing the same to $300,000. The fourteenth section of the charter, provided, "That, if said company shall not expend the sum of $50,000 upon said railroad or way, within four years, or if they shall not construct, complete, and put in operation, a single, double or treble railroad or way, as herein before authorized, within six years after the passing of this act, then the rights, privileges and powers of said corporation shall be null and void."

The third section directed, that eleven commissioners thereby appointed "shall open books, to receive subscriptions to the capital stock of said company, at such times and places, as they, or a majority of them, may appoint, and shall give such notice of the times and places of opening said books as they may deem reasonable, and shall receive said subscriptions, under such regulations as they may adopt for that purpose ; and, if more than four thousand shares of

stock shall be subscribed, they shall have the power to make the shares so subscribed, the capital stock of the company, provided they shall not exceed six thousand shares; and in case the subscriptions shall exceed six thousand shares, the same shall be reduced and apportioned, in such manner as may be deemed most beneficial to the corporation."

Nothing having been done under this charter, the legislature, in 1846, passed a resolution, by which it was "renewed and revived, with all the powers originally granted by said general assembly, and expressed in said charter, and all the powers and privileges incident thereto," and appointed ten commissioners, "to open the books, to receive the subscriptions to the capital stock, in lieu of the commissioners," appointed in 1835, "with the same powers, and subject to the same restrictions and regulations as were granted and imposed by and in said original charter; and the times limited and set down in the fourteenth section of said charter or act of incorporation, for the laying out or expending of moneys upon said railroad or way, and for the completion of the same, be, and the same are hereby extended, and shall be deemed to commence, at the rising of this general assembly. And, if said company shall not expend the sum of fifty thousand dollars upon said railroad or way, as is prescribed in said fourteenth section, within two years from the rising of this assembly, or if they shall not complete and put in operation a single, double, or treble railroad or way, as is authorized by said act of incorporation, within four years after the rising of this general assembly, then the rights, privileges and powers of said corporation shall be null and void."

After more than two years had elapsed, since the rising of the legislature, by which the charter was renewed, without any part of said sum of fifty thousand dollars having been expended, and previous to the session of the legislature in 1850, in February of that year, a majority of the commissioners of said railroad company, caused the follow-

The Danbury and Norwalk Railroad Company *v.* Wilson.

ing notice to be published in two newspapers, the *Danbury Times* and *Norwalk Gazette :*

" The commissioners, appointed by the general assembly of this state, to open the books, to receive subscriptions to the capital stock of the Fairfield county railroad, hereby give notice, that we will attend to the business of our appointment, at Lyman Keeler's hotel, in Danbury, on Thursday, the 28th instant, and Friday, the first day of March next, and at David Stevenson's hotel, in Norwalk, on the first Tuesday and Wednesday in March next. The books will be opened from nine o'clock A. M., until nine o'clock P. M., on each of said days.

" P. S. It is expected that all persons who have expressed a desire to take stock in the road, will call upon the commissioners on the days appointed."

Signed by a majority of the commissioners.
Danbury, February 23d, 1850.

In pursuance of this notice, books were opened, and subscriptions received at the times and places specified. The commissioners afterwards adjourned to the city of New York, for the purpose of obtaining further subscriptions, and two of their number went to said city, with the books of the company, where the defendant subscribed for fifty shares of said stock. At the time of subscribing, the stockholders paid three-fourths of one per cent. on the amounts subscribed by them. Prior to June 7th, 1850, unconditional subscriptions to the stock of said company had been made, to the amount of $186,000. Other subscriptions had also been made, that were to be binding, only in case said road should be located in a particular direction, which, with the other subscriptions, made up the amount of stock required by the plaintiffs' charter. By a notice, published in two newspapers, the commissioners called a meeting of the stockholders, for the choice of directors, on the 7th of June, 1850. At the meeting, held in pursuance of such notice, an organi-

zation of the company was effected, and ten directors were chosen, of whom the defendant was one. At this meeting, a portion of the conditional subscribers were present, and voted for directors.

Subsequent to said organization, the legislature again revived and renewed said charter, and extended the time limited in the fourteenth section of the original charter, for the completion of the railroad, for three years from the rising of the legislature of that year, altered the name of the corporation, to "The Danbury and Norwalk Railroad Company," and resolved, that the said charter should be further amended, in all respects, in such a manner as to conform to the general railroad law of this state, passed in 1849.

In June, 1850, the said directors elected a president, vice-president, and treasurer of said company, and empowered them to appoint a secretary from the board of directors. Said road was located, in part, by the directors, in August, 1850, and was accepted and approved by the commissioners, October 15th, 1850. The remaining portion was subsequently located by the directors, and accepted and approved by the commissioners, on February 5th, 1851. By the latter location, the conditional subscriptions were so far rendered binding, as to make up the amount of stock required by the charter. In pursuance of a vote of the board of directors, passed March 27th, 1851, the location of said road, for a short distance, at the eastern end thereof, was changed, and such alteration approved by the commissioners, in April of the same year.

In September, 1850, and after the last renewal of said charter, a meeting of the stockholders was convened, by the president and directors of said company, for the purpose of filling any vacancy in the board of directors, and, if deemed best, to add to the number of directors. Said meeting was duly called, by a vote of the board of directors, and notice thereof was given, by advertisement in the *Danbury Times* and *Norwalk Gazette.*

At this meeting, in which the defendant took part, a director was chosen, in place of one who had resigned, and six new directors were chosen, in addition to the then existing number. Subsequently, on the same day, at a meeting of the president and directors, at which the defendant was present, an assessment upon the amount subscribed, of ten per cent., including the amount paid by the stockholders, at the time of subscribing, was laid and made payable on the succeeding 20th of October, and also assessments of ten per cent., payable on the first Monday of December succeeding, and of each succeeding month, until the whole amount of the subscriptions should be paid. Notice of these votes was given to the stockholders, by their publication in the *Norwalk Gazette*,—and the subscribers, residing in Norwalk and vicinity, were requested to make payment to William S. Larkum, the assistant treasurer. The defendant co-operated with the other directors, at the meeting last mentioned. Much evidence was also introduced, in regard to his presence, at subsequent meetings of the board, and active participation in the proceedings of the directors.

The plaintiffs completed their railroad, as authorized by their charter, within three years after the rising of the legislature, in 1850.

The plaintiffs offered in evidence an agreement between the defendant and one Stevens, dated the second day of February, 1850, to the admission of which the defendant objected : but the court received the same, subject to legal exception. Said agreement stated, that, "Whereas said Stevens was desirous and willing to subscribe, and pay to said company, the sum of twenty thousand dollars, as a part of the capital stock of said company, provided he can be guaranteed and insured a dividend on the same, equal to six per cent., per annum, on said stock, for the term of twenty years, ensuing the date of these presents, and upon such terms, is willing and agrees to hold said stock for the term of

twenty years; and, whereas said Wilson, with a view of promoting the prosperity of said railroad, hath covenanted, and hereby doth covenant and agree, to and with said Stevens, to insure and guarantee to him, his heirs, executors, and administrators, that he or they shall receive an annual dividend on the said sum of twenty thousand dollars, so subscribed by said Stevens, to the capital stock of said company, of six per cent. per annum, for the said term of twenty years;" "that in consideration of such insurance and guarantee aforesaid, the said Stevens doth hereby covenant and agree to and with said Wilson, that he will forthwith subscribe his name to the capital stock of said railroad company, for the sum of twenty thousand dollars, and pay the same in such installments, and at such periods, as said company may require."

It was also stipulated, that said Wilson was to have the exclusive right of voting, on all necessary occasions, on one equal moiety of said stock, during said period of twenty years, and was to receive all dividends, during said period, over and above six per cent. per annum.

For the faithful performance of said agreement, each of the parties bound himself to the other, in the sum of ten thousand dollars. In pursuance of said contract, it was found, that Stevens subscribed for the $20,000 of stock.

There was no evidence introduced, of any by-laws ever having been passed by said company, on any subject, excepting one, authorizing the directors to call special meetings of the stockholders, which prescribed no mode of notice.

It was admitted that two, who were named as commissioners, never attended any meetings of the commissioners, or acted in that capacity; and there was no evidence, that they were ever applied to, or notified to act, as such.

The defendant having failed to pay the installments, laid as aforesaid, upon his stock, the same was legally sold, for

less than the amount of such installments, and transferred to the purchasers. After the evidence had been received, by consent of the parties, the cause was withdrawn from the jury, and the court found the facts, which had been proved, and such other facts as were inferable therefrom, and reserved the question, as to what judgment should be rendered thereon, for the advice of this court.

*Dutton* and *Averill,* for the plaintiffs, contended, 1. That the defendant, at the beginning of this enterprise, was active in prosecuting it, subscribed to the stock, and guaranteed six per cent. dividend, on a subscription of large amount; and that many persons, of less means, subscribed, because he did. He was elected a director, at the first meeting of the stockholders, and acted as such; and he now brings no proof of any wrongful act, committed either by the company, or by any member of it, and relies upon a technical objection, to avoid the payment of the installment, which he assisted to lay upon his own stock.

2. That the plaintiffs have complied with the requirements of their charter. By the renewed charter, $50,000 was to be expended, in two years, or the road was to be completed, in four years from the rising of the general assembly. If either had been done, the terms of the resolution would have been complied with.

The commissioners, named in the resolve of 1846, were appointed in lieu of those named in the original charter, and had the same powers; and they, or a majority of them, had power to act; to give notice; to open books; to receive subscriptions; to call the first stockholders' meeting, for the choice of directors; and declare who are elected. This a majority have done. Private Laws, 998. *Crocker* v. *Crane,* 21 Wend., 211.

3. That the caption of the subscription, signed by the defendant, shows, explicitly, that he subscribed not only, " upon the terms, conditions, and limitations, mentioned in the char-

ter," but on " such further terms, conditions, and limitations, as might be expressed in any resolution of said general assembly, *amending, altering,* or *renewing* said charter."

The resolution of 1850, renewed, revised, and altered the charter, and changed the name to the Danbury & Norwalk Railroad Company, and under the renewed charter, the directors were elected, and the company duly organized. *Ex parte Murphy,* 7 Cow., 153. 19 Wend., 635.

4. That it is not necessary that all the directors shall be present, or be notified to be present, to constitute a legal meeting. They, as a majority, may act, and have power to lay installments, and direct the time and manner of payment. The defendant was present, and acted, in laying the installment in this case. The defendant is estopped from denying his liability. *Chester Glass Co.* v. *Dewey,* 16 Mass., 94. *Welland Canal* v. *Hathaway,* 8 Wend., 483. *Salem* v. *Williams,* 9 Wend., 147. *Dezell* v. *Odell,* 3 Hill, 215. *Frost* v. *Saratoga Ins. Co.,* 5 Denio, 154. *Reynolds* v. *Lownsbury,* 6 Hill, 534. *Kinney* v. *Farnsworth,* 17 Conn. R., 355. *Roe* v. *Jerome,* 18 Conn. R., 139. *Cowles* v. *Bacon,* 21 Conn. R., 451. The *Middletown Bank* v. *Jerome,* 18 Conn. R., 443. The *H. & N. H. R. R. Company* v. *Croswell,* 5 Hill, 383. *Stanton* v. *Wilson,* 2 Hill, 153. 7 Barber, 157. 1 Wend., 98.

*Hawley,* for the defendant, contended, 1, That the persons who acted as commissioners, had no authority, as such, to act ; the charter being, at that time, by its own terms, extinct. If they had possessed authority, the whole number must have acted, or at least, been *notified to act with the others.* Two of such commissioners never acted, nor were they *notified to act.*

2. That the *mode* in which subscriptions were obtained, was objectionable. Those who acted had no power to appoint agents to itinerate in subscriptions. The charter requires the *commissioners* to appoint times and places, &c., and con-

templates only such subscriptions as should be made, on opening books according to the charter, and after the charter was obtained. Hence the subscriptions, so called, derived no validity from any authority in those who obtained them, no more than if obtained by any other person or persons. No subscriber could, on the organization of the company, have established a claim to be a stockholder, on *the strength of his subscription.* 1 B. & P., 235, 236. 8 East, 319, 228. Angell & Ames, 457. 20 Conn. R., 332. 18 Conn. R., 197. 2 Pick., 355.

3. That the subscriptions were themselves entirely void; for the subscribers only professed to take stock at the time of subscription, when there was no company in existence, in which stock could be taken. If they can be regarded (which is denied) as promises to take stock in future, they are void, for want of consideration and want of a *promisee.* See Angell & A., 478, 481, & n. 490. 6 B. & C., 341, (13 E. C. L., 195.) The reference to subsequent alterations in the charter, does not help the plaintiffs, for that does not supply *either consideration or promisee.* An agreement to become a stockholder, in any kind of company the legislature might (at any time hereafter) create, would not be obligatory; and no such alterations as those effected by the resolution of 1850, and the general law on the subject, could have been contemplated.

4. That the case is not varied, by any of the conduct ascribed to the defendant. That he was appointed a director, or ever acted as such, does not conduce to show him a stockholder, for neither the charter nor the law requires, that the directors be *stockholders.* A reference to the charters of banks, manufacturing companies, turnpike companies and railroad companies, will show, that whenever the law requires that officers be stockholders, it requires it by express enactment. If this subsequent conduct of the defendant could help out his subscription, the declaration should be framed accordingly. The plaintiffs go entirely on the

ground of a subscription, at the opening of the books ; and if they claim, that he is liable, by reason of his subsequent conduct, they should declare accordingly. The mode in which he became a stockholder, should be shown. It nowhere appears, that the company has done an act, or incurred the least expense, in reliance on the defendant's subscription.

5. That the subscriptions never had the sanction of the commissioners,—certainly not of all of them.

6. That the stockholders' meeting, (June 7th and 18th) was irregular, and all its proceedings void. It was held, long before the rising of the assembly, which was June 22d ; and also before there was any power to organize, because there were not then subscribed $200,000,—only $186,000. The conditional subscriptions could not be regarded. They were not subscriptions.

7. That the stockholders' meeting at which additional directors were appointed, was irregular, because not warned, pursuant to any by-law. Stat., 1849, p. 33. The directors, then appointed, were not legal directors, and their action, with the others, in laying the installments, rendered the doings void. Angell & A., 324, 325. The directors' meeting, which the installments were laid, was irregular ; all were not present, nor notified to be present. The vote, laying the installments should, in terms, have made them payable to the treasurer of the company, and notice should have been given, pursuant to a *by-law*. Stat., 1849, p. 40.

9. That the installments were laid, before the stock was full ; only $186,000 had then been subscribed. The conditions which render the subscription for the remainder, binding, were not performed till October 15th. The plaintiffs could not, lawfully, assess on less than $200,000, of *positive*, absolute subscription.

10. That the sale of the defendant's stock, (if he ever was a stockholder,) terminated his membership,—and there was no liability to a suit afterwards. Angell & A., 482, 493, and cases cited.

11. That the change of the route of the plaintiffs' road, was illegal. The company, by its first location, exhausted its powers,—and that change absolved the defendant from any further liability.

STORRS, J. In this case, the defendant claims, in the first place, that the neglect of the grantees of the original charter, under which the plaintiffs claim to possess and exercise corporate powers, by virtue of the renewals thereof, to expend fifty thousand dollars within two years after the rising of the legislature, in 1846, was a non-compliance with the resolution of that year, renewing that charter. The plaintiffs claim that, by the true construction of that resolution, it would have been a compliance with it, either to have expended that sum, within said two years, or to have completed the railroad, within four years after the rising of the legislature of that year ; and that the resolution of 1850, again renewing the charter, dispensed with the completing of the road within said four years, and extended the time therefor, three years longer, within which latter time the road was completed : and that, therefore, there was no non-compliance as claimed, or, that it was excused. We do not accede to this construction of the resolution of 1846. Its phraseology is too explicit to admit of such an alternative meaning. Its true construction is, not that the company should either expend said sum or complete the road, at their option, within the times respectively prescribed therefor, but that they should do both of those things. Therefore, the charter, as renewed in 1846, was not, in those respects, complied with.

The defendant, thereupon, further claims, that, in consequence of such non-compliance, the rights, privileges and powers of the corporation, created and renewed as aforesaid, by the express terms of the charter and the resolution first renewing the same, became extinct ; and that, therefore, there then ceased to be any such corporate body capable of organization.

Whether, independently of the second renewal of the charter in 1850, and the effect of the particular terms of the subscription, in connection with the organization of the company, and the conduct of the subscribers after such second renewal, the corporate powers and capacity conferred by the charter, as first renewed in 1846, would, by the omission, on the part of the company, to expend the sum of fifty thousand dollars and to build the railroad, within the times required by the first renewal, have ceased and become so extinct, when the subscription was made and the first organization of the company took place by the choice of the first directors, that that organization would be an absolute nullity, not only as to the state, but also as to others, and the subscribers themselves so organizing, if the charter had not been again renewed ; or, whether, after such organization, the effect of the subsequent renewal of the charter was to dispense with the omission to expend said sum of fifty thousand dollars, within the time prescribed for that purpose, and with the consequences of such omission, and so to revive the powers of the company as to validate such previous organization,—are questions which we deem it unnecessary to determine : because, supposing that the objections made by the defendant to the regularity of the several steps which were taken in such organization, (which will be presently considered,) are untenable, we are of opinion that the notice of the commissioners to the subscribers, to meet as stockholders, for the purpose of choosing directors, in addition to those originally chosen,—the meeting of the subscribers for that purpose, in pursuance of that notice,—and the choice by them of such additional directors,—amounted to an acceptance of the charter by the subscribers, as renewed in 1850, and a recognition and confirmation of all the steps which preceded and resulted in the first organization of the company ; and was equivalent to and constituted a new organization, as at the time of said last meeting of the sub-

scribers, of the corporation, and should be so regarded, even on a *quo warranto*, brought on behalf of the state, to try the question of the validity of their corporate powers: much more, as between the subscribers themselves, and as between them and the defendant, who was a subscriber to the stock and acted as a stockholder, in that meeting; and that they should be precluded from disputing the validity of those proceedings, or repudiating them, where the acts of the directors thus chosen, are in question. After those proceedings, it is too late for them to retract what had been previously done, even if it would have been proper or competent for them, otherwise, to have done so.

The defendant, however, claims, in the next place, that there were such irregularities and departures from the charter, in the several steps taken by the commissioners and subscribers in organizing the company, that such organization is illegal and of no avail. He insists, 1. That all of the commissioners, in all cases, should have acted, or, at least, have been notified, and had an opportunity to act, in relation to the duties of their appointment. 2. That the mode of obtaining the subscriptions to the stock, by the defendant and others, was unauthorized, because it was not done by the commissioners personally. 3. That the commissioners should not have received the conditional subscriptions to the stock,—that, without including those subscriptions, there would not have been the amount subscribed which the charter required,—and that, therefore, they had no authority to convene the stockholders for the choice of directors, and that such choice was void. 4. That they illegally received the subscription of the defendant, at another time and place than those mentioned, in the notice for that purpose. 5. That there should have been a formal assignment or distribution by the commissioners, to the defendant and the other subscribers, of their stock. 6. That the meetings of the stockholders for the choice of directors, were convened, before the

requisite amount of legal subscriptions was obtained, and therefore, before they had power to organize, and hence, that they had no authority to choose directors.   7. That the conditional subscribers should not have been allowed to vote in those meetings ; and 8. That, as it does not appear that there was any warning of the stockholders' meeting for the choice of the additional directors, its proceedings were void.

We are inclined to the opinion, that the specific answers, given by the plaintiffs to these several objections, are sufficient, excepting, perhaps, that which is grounded on the conditional character of some of the subscriptions received by the commissioners, and the circumstance that the conditional subscribers were allowed to vote at the meetings of the stockholders for the choice of directors, respecting which there is more difficulty : but in regard to that objection, we are also inclined to think, that those subscribers, by taking a part as stockholders in such meetings, should be deemed to have waived the condition annexed to their subscription, and that this objection is thus obviated.   But it is not necessary for us to express a decided opinion on that or any other of these objections, because we have no doubt, that the conduct of the defendant, in regard to the organization by the choice of directors, and the preliminary steps which led to it, and his conduct since that organization, was such as ought to preclude him, as between himself and the plaintiffs, in an action like the present, which is brought to recover the amount due on the installments assessed on his stock, from disputing the regularity or validity of these steps taken in the organization of the plaintiffs, as a corporation.   He was a party to, and co-operated very actively with the other subscribers and the commissioners, in that organization, and participated in all the proceedings which led to it.   He was one of the earliest and largest subscribers to the stock, and induced others also to subscribe to it,—attended, on the call of the commissioners, all the meetings of the stockholders, as one of them, and acted with them, in the choice of di-

rectors,—accepted the office of director, to which he was chosen, and acted as such, in the meetings of the directors, and in the meetings at which the installments on the stock were laid,—and, until called upon long afterwards, for his part of those installments, it does not appear that he ever questioned the regularity of the organization of the company or its corporate powers : and he continued to be, and acted as, a director, subsequently, during all the time while the arrangements were made by the directors for the building of the road, and the operations connected with it. In consequence of this conduct on his part, and on the strength of what was thus done by him, in connection with the other stockholders and directors, the other subscribers, generally, were induced to pay for their stock ; and the company have also been induced to incur the expense of building their railroad, and of carrying on all the branches of their business connected with it. The other stockholders have thus been led to invest their funds and assume responsibilities, in a mode and to an extent which they would not have done, but for this conduct of the defendant. The consequence of permitting him now to repudiate his acts, might be to devolve upon the other subscribers a personal liability for the engagements of the company,—to make them even trespassers in regard to those whose property has been taken for the construction of their road, and to frustrate the whole object of their undertaking. It requires no argument to show that, under these circumstances, the case comes within the well established and most just and wholesome principle, that a person who, by his declarations, or a course of conduct, which is a species of declarations, has willfully induced another injuriously to alter his condition, is, as against the latter, estopped from denying the truth of such declarations, or the rightfulness of such conduct. *Brown* v. *Wheeler,* 17 Conn. R., 345. *Kinney* v. *Farnsworth,* 17 Conn. R., 361. *Roe* v. *Jerome,* 18 Conn. R., 138. *Noyes* v. *Ward,* 19 Conn. R., 250.

The defendant's counsel have discussed the question in regard to the organization of the plaintiffs, as though this was a writ of *quo warranto*, brought to test the competency of the plaintiffs to act as a corporation. Such a proceeding, however, as it would involve the rights of the plaintiffs as against the state, would present a very different question from that which arises in the present suit, which depends merely on the relations between the plaintiffs and defendant : and it is therefore unnecessary to determine, what would be the result of a proceeding of that character. Nor need we here enquire what rights the plaintiffs have acquired, in consequence of what has been done by them, as against any third person other than the defendant. That question would obviously depend on other considerations than those upon which we have placed this part of the case.

The organization of the plaintiffs must, therefore, be deemed to be valid.

The defendant does not controvert the principle which we have repeatedly decided, and which is here to be considered as established, that, by the subscription of a person to the stock of a railroad corporation, of the number of shares annexed to his name on the terms, conditions and limitations mentioned in the charter, and the allowance to him of the shares so subscribed, the relation of stockholder and company as between him and the corporation, is created, from which the law implies a promise by him, to pay installments ordered by the directors, pursuant to the charter. The *Hartford & New Haven Railroad Company* v. *Kennedy,* 12 Conn. R., 499.

But he claims that the subscription itself, in this case, is entirely nugatory, on the ground, first, that it only professed to take shares of stock then, that is, at the time of the subscription, in existence, whereas there was then no company in existence in which stock could be taken ; and, secondly, that if it should be regarded as a subscription to stock at a future time, it was void, as an engagement of that descrip-

tion, for the want of a consideration or a promisee. We do not deem it necessary to examine these claims particularly, because we think that they are directly and palpably at variance with the views taken by this court, of the nature and effect of such a subscription, in the *Hartford & New Haven Railroad Company* v. *Kennedy*, (12 Conn. R., 499,) which was a case essentially and almost exactly like the present, in regard to the circumstances on which these points depend, and in which our opinion was so fully expressed that it is sufficient to refer to it. Whether the defendant would have incurred any obligation by his subscription, if the charter of the plaintiffs had not been renewed in 1850, or if the defendant had refused to concur with the other subscribers, in accepting it as then renewed, or if there had been no subsequent organization of the company, or that which was equivalent, we need not determine. We have no doubt that, after such acceptance and organization, a liability to the company to pay the installments which were ordered, attached to the defendant, by virtue of his subscription. By that subscription, and the allowance to him by the commissioners, of the shares for which he subscribed, he became entitled to those shares, subject to the payment for them by him, as it should be required by the directors. That title constituted a good consideration for an express promise on his part, or, if there was no such promise, the law would, under the circumstances, imply a promise by him to make such payment. The consideration of such a promise, is the title which the subscriber to stock shall acquire to it, and in this case, the defendant acquired such title, and could have compelled a formal transfer of it to him, and a certificate of ownership, subject to the payment of installments regularly required; but such certificate was not requisite, in order to constitute him the owner.

The defendant insists that there should have been a formal assignment to him, by the commissioners, of the shares allowed to him, or a record of such assignment. We do not,

however, deem that to be necessary, where, as in the present instance, the amount subscribed did not exceed the capital to be raised, and it was therefore unnecessary for the commissioners to reduce or apportion the shares subscribed. There having been no over subscription in this case, if any particular act by the commissioners was necessary in order to signify their assent to the defendant's taking the stock subscribed by him, it was sufficient that they received from him and retained the amount paid by him towards the stock, when he subscribed, and that they recognized him as a stockholder, by consenting that he might act as such, in the meetings of the stockholders.

The vote of the directors requiring installments, is objected to, because it did not, in terms, make them payable to the treasurer of the company. The eighth section of the general railroad act, to which the charter, as last renewed, was made subject, was in this respect substantially complied with, and that was sufficient. The requirement in the vote, that the installments should be paid at the times therein designated, imports that payments should be made to the treasurer, who is the proper and only officer to receive and keep the moneys of the corporation.

The defendant next objects to a recovery by the plaintiffs, on the ground that notice of the assessments on his stock was not given according to the requirements of the eighth section of the general railroad act. That section provides that the president and directors of railroad corporations may direct the assessments on the shares to be paid to the treasurer, " in such manner and with such notice as may be prescribed by the by-laws of the company." The facts bearing on this point are, that the company who are the plaintiffs in this case, never passed any by-law prescribing the mode of such notice,—that the defendant was a director of the company, and as such, was present and acted in the meeting of the directors, at which the vote laying those assessments

was passed,—and that, by their direction, notice of the assessments was given by the treasurer to the stockholders, by advertising them five days thereafter in the newspaper published in the town where the defendant resided. We are of opinion that it was not the design of that section, to make the mode of notice therein mentioned exclusive of all others. If, indeed, a by-law on the subject had been passed, the stockholders would have a right to require that it should be complied with. But if they should not see fit to pass one, and there was no statute, or provision in the charter, prescribing the kind of notice, it would come within the general powers of the directors to adopt any mode which should be reasonable : and the company might prefer to leave that subject to the judgment of the directors, rather than to prescribe themselves an unbending rule, which might prove to be embarrassing or inconvenient. Indeed it will be found, that this is the course which has usually been taken ; probably because the manner of making assessments, and of apprising the stockholders of them, may generally be confided to the discretion of the directors, more beneficially than to the stockholders, as the former have the best means of judging when and in what manner the exigencies of the company require assessments to be made and notified. We do not think, therefore, that it was intended, by that section, to take away any of the general powers of the directors in this respect, excepting where they should be controlled by a by-law. In this case, the defendant had actual notice of the assessments, when they were made ; and if there had not been such notice, we should not doubt that the early advertisement of them in the newspaper published where he resided, should be considered a reasonable notice to him. If however, the true construction of that statute required that a by-law, prescribing the notice, should be passed, and that no other mode could be adopted, we think that that requirement might be waived by the defendant, and that his course

as a director, in regard to the assessments in question and the notice thereof, would amount to such waiver.

The defendant further insists, that the plaintiffs, by the sale of his shares, are precluded from maintaining this suit. That claim is directly opposed, not only to our decision in the *Hartford & New Haven Railroad Company* v. *Kennedy*, but also to the explicit provision of the general railroad act, authorizing a sale of stock, on the neglect of the owner to pay assessments, that "If the shares of any delinquent stockholder shall not sell for a sum sufficient to pay his assessment, with interest and charges of sale, he shall be held liable to the corporation for any deficiency."

The plaintiffs caused a location of the entire route of their railroad from Danbury to Norwalk to be made, which was in all respects legal, every step in regard to it required by the charter having been pursued. Afterwards, for a short distance on the northerly end, that location was altered, and a new route substituted, the requisite steps having been taken, as to said substituted portion of the route. The defendant claims that such alteration was unauthorized by the charter, and that he is consequently absolved from his liability on his subscription. It is a conclusive answer to this claim, that, if the alteration of the route was unauthorized, it left the original location valid, and the defendant's liability on his subscription unimpaired ; and if the alteration was legal, it removes the objection founded on its supposed invalidity. But an irregularity in the location of the road, either in whole or part, whatever its effect might be on the rights of others, or whatever may be the nature of the remedy, by the stockholders, for a misapplication of the funds or the credit of the corporation, furnishes no defence to the stockholders, in an action to recover the installments on their stock. Such an action is not adapted to the purpose of investigating the legality of the doings of the corporation, or its officers, in these respects.

The defendant excepts to the admissibility of the contract

between him and Stevens, introduced by the plaintiffs, as evidence in this case. It is clearly admissible, for the purpose, at least, of showing, that the defendant procured others to subscribe to the stock of the company, and the inducements which he held out for that purpose.

We have thus considered the points made on the argument of this case, and the result is, that the plaintiffs are entitled to judgment for the balance due on the installments, after deducting the proceeds of the defendant's stock.

The superior court is advised accordingly.

In this opinion, the other judges concurred.