### GEORGE W. LANE *vs.* ERASTUS BRAINERD.

The record book of a corporation recited that a meeting of the stockholders for the purpose of organization was held, pursuant to notice given by the persons who by the charter were authorized to call such a meeting when $500,000 of the capital stock had been subscribed. Held, that the record was evidence of the fact recited, and also presumptive evidence of the fact that the requisite amount of capital had been previously subscribed, and was, unless rebutted by other evidence, sufficient proof.

The defendant had subscribed for additional stock, and his subscription was procured by the directors, after the organization of the company, without the intervention of the commissioners named in the charter. The defendant had after-

---

* The case of *Lane* v. *Brainerd* was the only one at this term. Judge Butler was disqualified by having tried it in the court below, and Judge Dutton had been counsel. when at the bar. for the New York & Boston R. R. Co., whose rights were involved in the suit. Judge Seymour of the superior court was therefore called in to sit.

wards acted as a director. Held, that by so doing he should be deemed to have waived all objection, if any existed, to the regularity of his subscription.

The corporate record book recited that directors' meetings were held at which installments were laid upon the stock, and that a quorum was present. Held, that this was presumptive proof that all the directors had been duly notified of the meetings, whether living in this state or elsewhere.

The original charter granted by the state of Connecticut required four directors to constitute a quorum. The company was afterwards merged with a corporation chartered by Rhode Island, whose charter was silent as to the number required. By the contract of merger, which was affirmed by the Rhode Island legislature, the latter company surrendered its franchises, powers and privileges to the Connecticut company; and the Connecticut legislature, by an act confirming the merger, declared that all the rights of the old company in this state should be preserved to the new one. Held, that after the merger four only, and not a majority, were necessary for a quorum.

The defendant subscribed a paper, by the terms of which he agreed " to take the number of shares in the New York and Boston Railroad Company," set opposite to his name. Opposite his signature was set the number of the shares and the amount. Appended to his signature were these words: " To be expended between the Connecticut river and the east line of the state." The defendant accepted the office of director and acted as such. Held, that in view of this fact the defendant must be deemed to have intended to become at once a stockholder; and that the words appended to his signature were intended by him, not as a condition precedent, upon the performance of which he would become a stockholder, but merely as a direction that the amount he was to pay should be expended east of the river. Held also, that even if the words did constitute a condition precedent, it could be waived by him, and that his acting as a director would be a waiver.

To render the testimony of a deceased witness in another case admissible, it is not enough that the questions in the two cases are identical, but the parties must be the same, or in privity.

SCIRE FACIAS in foreign attachment; tried to the jury in the superior court, before *Butler, J.* The plaintiff had sued the " New York and Boston Railroad Company," described in the writ as " a corporation duly created by the legislatures of the states of Connecticut, Rhode Island and Massachusetts," and had factorized Erastus Brainerd as the debtor of the company. The present action was brought against Brainerd, but he having died before the trial, his executors appeared and defended. On the trial the plaintiff claimed that Brainerd was indebted to the company at the time the original process was served upon him, for installments laid by the directors on stock subscribed for by him.

The original company was chartered by the legislature of Connecticut. It was afterwards merged with the " Woonsocket Railroad Company," chartered by the legislature of Rhode Island. The installments were laid after that merger. A second merger afterwards took place with a company chartered by Massachusetts, but that fact is not material here. The plaintiff, in order to prove the due organization of the original company, introduced what purported to be the record of the meeting of stockholders held for that purpose. It recited that the meeting was " held pursuant to notice by the corporators " named in the charter. No evidence aside from this record was offered to show that the sum of $500,000, required by the amended charter to be subscribed before such organization should take place, had been in point of fact subscribed. The defendants insisted that the organization was illegal and void unless such sum had been previously subscribed, that the burden of proof was upon the plaintiff to show that it had been so subscribed, and that the record alone was not sufficient evidence of that fact; and prayed the court so to charge the jury. The plaintiff claimed that the record was *prima facie* sufficient, and, unless rebutted, conclusive. The court below sustained the claim of the plaintiff and charged the jury accordingly.

It appeared by the evidence that the company in 1852, several years after its first organization, with a view to extend its road eastward from Middletown, and to form a through line to Boston by connection with other roads, desired to increase its capital stock, and for that purpose issued new subscription books, and sent them by agents appointed by the directors into the various towns on the line of the proposed route, to procure additional subscriptions. The book on which Brainerd subscribed was one of that class. The commissioners named in the charter had no knowledge of these books, and never accepted or approved the subscriptions. The defendants claimed, and asked the court to instruct the jury, that the subscription of Brainerd thus obtained, was not legally procured or binding, but the court instructed them that the company by its directors had power to procure such additional

subscriptions without the action of the commissioners, and that a subscription thus obtained was legal.

The records of the company recited that Brainerd had been elected a director, and had on one occasion attended a meeting of directors and voted as such. The defendants offered evidence tending to show that he had never so attended or acted, and that the record was untrue. On submitting the case finally to the jury, the court instructed them to find specially on this point, and they found that he did so attend and act.

For the purpose of proving that calls had been duly made upon the stock, the plaintiff offered in evidence the directors' record of the proceedings of the meetings (ten in number) at which the calls were made. The record showed on its face that at least four directors (the number required by the Connecticut charter to constitute a quorum) were present, but contained no evidence that the other directors were notified of the meetings. These calls were all made after the merger with the Woonsocket Railroad Company, and two of the directors then acting resided in Rhode Island. These directors were present at but one of the meetings referred to. The meetings appeared to have been all held at the company's office in Middletown. The defendant claimed, and requested the court to instruct the jury, that the plaintiff must prove that all the directors living in Connecticut or Rhode Island received reasonable notice of the meetings, and that the record alone afforded no such evidence. Upon this point the court charged the jury as follows : " The plaintiff must show that the meetings at which the installments were laid were legal. The general rule is that all the directors must be notified, in order to make the meeting legal, but all need not attend. If the charter names a specific number as necessary to constitute a quorum, that number at least must be present. The plaintiff claims that the record shows that the meetings were held, and that it is to be presumed as a matter of law from this fact that they were legally held, and that due notice was given ; and I instruct you that if the record shows that a quorum was present, and if you do not find from other evidence that the directors were in point of fact not notified, then

the law authorises a presumption that they were. If however you find that they were not notified, then the meetings were not legal, and the proceedings were void."

The charter of the Woonsocket company had no provision as to what number of directors should constitute a quorum. The Connecticut charter required four. The contract of merger had no express provision as to which charter was to govern in this respect, but it provided that the Woonsocket company was to " surrender its franchises, powers and privileges" to the Connecticut company ; and the legislature of Connecticut, by an act passed in 1854, approving the merger, declared that the new company should " have all the powers, rights, privileges and franchises " of the New York and Boston Railroad Company in this state. The defendants claimed that after the merger, and in consequence of it, a majority of all the directors of the new company was necessary for a quorum, and requested the court so to charge the jury. But the court did not so charge.

The heading of the subscription offered in evidence was as follows : " We, the subscribers, hereby agree to take the number of shares in the capital stock of the New York and Boston Railroad Company set opposite to our respective names." To Mr. Brainerd's signature was appended the following : " To be expended between Connecticut river and the east line of the state." It was admitted that no part of the road east of the river had been built, or even located ; but that expenses to the amount of $10,000 and over, had been incurred for surveys on that side of the river. The defendants offered evidence to prove that these expenses had all been paid by the company ; also to prove that the company was insolvent and unable to build the road east of the river, and that such insolvency was produced voluntarily and fraudulently. The defendants thereupon requested the court to charge the jury that the subscription was conditional, and that Brainerd did not thereby become a stockholder; or, if he did, that he could not be called upon to pay except for expenses incurred in building the road east of the river; and that if they should find that the company had abandoned their charter, or designedly disabled themselves

from building the road, then the plaintiff could not recover. The court declined so to charge the jury.

One Bishop had formerly sued the company, and factorized Brainerd, and on *scire facias* sought to hold him liable as a debtor of the company upon the same subscription. At the trial of that case Brainerd himself testified as a witness. He having since died the defendants offered evidence to show what he had testified to on that trial. To this the plaintiff objected, and the court ruled it out.

The jury having rendered a verdict for the plaintiff, the defendants moved for a new trial.

*T. C. Perkins* and *Tyler*, in support of the motion.

1. The court below erred in charging the jury that the facts set forth in the record of the meeting for organization were presumptive proof of the regularity of the previous proceedings. Such a presumption sometimes exists when jurisdiction has been first proved, but not in this case. It does not exist in favor of inferior courts, or boards intrusted by the legislature with special powers. In such cases it must be proved. *Sears* v. *Terry*, 26 Conn., 273; *Mills* v. *Martin*, 19 Johns., 33; *Peacock* v. *Bell*, 1 Saund. R., 74, and notes; *Willard* v. *Killingworth Borough*, 8 Conn., 252.

2. The court erred in charging that the subscription was binding though obtained without the authority of the commissioners. The charter fixes the method of procuring the subscriptions, which are to be received under the supervision of the commissioners, and makes no provision for any other mode of taking them.

3. The mere presence of a quorum of directors affords no presumption that all were notified. The record does not recite that they were notified. The presumption as to regularity of proceedings does not reach a case like this.

4. The court erred in omitting to charge that a majority was necessary to constitute a quorum after the merger. When the new company was formed it became subject to the general rule that a majority is necessary for a quorum. *Damon* v. *Granby*, 2 Pick., 352.

5. The court erred in its charge as to the operation of the clause annexed to Brainerd's subscription. The charge is, in substance, that the insolvency and fraud of the company did not absolve the defendants from paying, but only gave them a claim to receive the amount back from a corporation confessedly insolvent. This was not a subscription to the original capital, but a subsequent contract made for the specific purpose of extending the road east. The construction of such contracts depends upon the peculiar circumstances of each case. *Tileston* v. *Newell*, 13 Mass., 407; 2 Pars. on Cont., 187; *Gardiner* v. *Corson*, 15 Mass., 500; *Barrusso* v. *Madan*, 2 Johns., 145; *Redfield on Railways*, sec. 51 and notes, and secs. 56, 57 and notes. This object was also expressly declared in the subscription itself. This is not a suit by the company to recover the money in order that it may be expended in that way; but this very judgment at once applies it to a different purpose. If the company were to attempt to expend it west of the river, an injunction would lie to prevent it. The company being insolvent, the same reason exists now for the courts' interposition. *New London* v. *Brainard*, 22 Conn., 556; *Elmendorf* v. *Lansing*, 4 Johns. Cha., 464; *Commonwealth* v. *Bank of Penn.*, 3 Watts & Serg., 184; *Thayer* v. *Swift*, Harring. Cha., 430; 2 Story Eq. Jur., § 907. It prevents circuity of action. *Lyon* v. *Annable*, 4 Conn., 355. In a *scire facias* the court regards the equitable as well as the legal rights of the parties. *Barber* v. *Hartford Bank*, 9 Conn., 407. It is a rule of law as well as of common sense, that if one of two parties disables himself from performing his part, the other is absolved. *Planche* v. *Colburn*, 8 Bing , 14; *S. C.*, 5 Car. & P., 58; *Newcomb* v. *Bracket*, 16 Mass., 164; *Hopkins* v. *Young*, 11 id., 306; *De Peyster* v. *Pulver*, 3 Barr, 284; *Clark* v. *Crandall*, id., 612; *Estell* v. *Jenkins*, 4 Dana, 75. This rule applies especially here, as the work has not been done within a reasonable time. *Hayden* v. *Stoughton*, 5 Pick., 534.

6. Brainerd's evidence given at the trial of Bishop's case should have been admitted. The question on both trials was the same, to wit, Brainerd's liability on his subscription.

Both plaintiffs claim under the railroad company. If the company had been plaintiff in the two cases, this evidence would have been clearly admissible.

7. The finding of the jury as to Brainerd's acting as a director does not affect any of the questions involved. It can only affect them as being a waiver, or an estoppel. These are both substantially questions of fact to be found by the jury. *Callender* v. *Colegrove*, 17 Conn., 29 ; *Hill* v. *Hobart*, 16 Maine, 164 ; *Fitch* v. *Woodruff & Beach Iron Works*, 29 Conn., 82. Here the jury have found neither ; at the utmost they have found only a fact, which may or may not be evidence of a waiver or estoppel. This court does not find facts from the evidence. *Miller* v. *Welles*, 23 Conn., 34. Whether this fact would be a waiver or estoppel would depend upon the attendant circumstances, which are not found.

*Towle* and *Culver*, with whom was *Warner*, contra.

1. The record of the meeting for organization afforded sufficient proof, *primâ facie*, that the $500,000 was subscribed. 1st. It was sufficient proof of the fact of an organization. Ang. & Ames on Corp., §§ 513, 679 ; Redfield on Railways, sec. 18, art. 10 ; *People* v. *Oakland Co. Bank*, 1 Doug. (Mich.,) 285 ; *Penobscot & Kennebec R. R. Co.* v. *Dunn*, 39 Maine, 596. 2d. That fact, once proved, became itself presumptive evidence that all the previous requisitions of the charter had been complied with. Such presumptions exist in a multitude of cases, and are applied to corporate as well as individual acts. 1 Greenl. Ev., §§ 33, 34, 40 ; *Hartwell* v. *Root*, 19 Johns., 345 ; *U. S. Bank* v. *Dandridge*, 12 Wheat., 64, 70 ; *Middlesex Husbandmen &c.* v. *Davis*, 3 Met., 133 ; *West School District* v. *Merrills*, 12 Conn., 440 ; *Brownell* v. *Palmer*, 22 id., 108 ; *Isbell* v. *N. York & N. Haven R. R. Co.*, 25 id., 564 ; Ang. & A. on Corp., § 80 ; *Wood* v. *Jefferson Co. Bank*, 9 Cowen, 194 ; *Penobscot & Kennebec R. R. Co.* v. *Dunn*, 39 Maine, 587 ; *Ryder* v. *Alton & Sangamon R. R. Co.*, 13 Ill., 516. The mere *de facto* exercise of corporate powers is presumptive proof of previous acts required. Henderson, J., in *Tar River Naviga-*

Lane v. Brainerd.

*tion Co.* v. *Neal*, 3 Hawks, 537 ; *Bank of Manchester* v. *Allen*, 11 Verm., 307 ; *Turnpike Co.* v. *Mc Carsan*, 1 Dev. & Batt., 309 ; *Mendota* v. *Thompson*, 20 Ill., 197 ; *Hagerstown Turnpike Co.* v. *Creeger*, 5 Har. & J., 124 ; *Gray* v. *Turnpike Co.*, 4 Rand., 578. Where a meeting is held it is proof that a quorum was present. Ang. & A. on Corp., § 513 ; *Commonwealth* v. *Woelper*, 3 Serg. & R., 32 ; *Despatch Line of Packets* v. *Bellamy Manufacturing Co.*, 12 N. Hamp., 205. An election held is proof that it was by ballot. *Blanchard* v. *Dow*, 32 Maine, 557. A director acting, that he was legally elected. *Fairfield Turnpike Co.* v. *Thorp*, 13 Conn., 183. Every reasonable presumption is to be made in favor of the regularity of corporate acts. *Hagerstown Turnpike Co.* v. *Creeger*, 5 Har. & J., 124 ; Redfield, J., in *McDaniels* v. *Flower Brook Co.*, 22 Verm., 274 ; Ang. & A. on Corp., § 635.

2. The subscription, though not procured by the commissioners, was legal. 1st. It does not lie in the defendant's mouth to deny this. He was *particeps criminis*. 2d. One object of requiring commissioners was to prevent a monopoly of the stock. If the defendant has aided to defeat this object, and is one of the monopolizers, he has no reason to complain. *Hagerstown· Turnpike Co.* v. *Creeger*, 5 Har. & J., 122 ; *Union Turnpike Co.* v. *Jenkins*, 1 Caines, 381. A subscription procured by a mere volunteer is binding. *North-East R. R. Co.* v. *Rodrigues*, 10 So. Car. Law R., 278. 3d. The commissioners' office and duty had ceased, the directors take their place. See the charter, secs. 2, 5, 7, 13 ; *Lohman* v. *N. York & Erie R. R. Co.*, 2 Sandf., 49. 4th. The defendant has waived all illegality and accepted the stock. His subscription is executed. He is estopped. *Litchfield Bank* v. *Church*, 29 Conn., 150 ; *Wight* v. *Shelby R. R. Co.*, 16 B. Monr., 7 ; *Danbury & Norwalk R. R. Co.* v. *Wilson*, 22 Conn., 449.

3. The fact that a meeting was held, when once proved, is presumptive proof that all the directors were notified. See authorities cited under the first head above. The following cases are directly in point. *Sargent* v. *Webster*, 13 Met.,

497 ; *Penobscot & Kennebec R. R. Co.* v. *Dunn*, 39 Maine, 587, 600 ; *McDaniels* v. *Flower Brook Co.*, supra.

4. A majority of directors was not required for a quorum after the merger. The Connecticut charter required but four. The Rhode Island charter was not adopted by the contract of merger, but the Connecticut one, at least tacitly. The new company surrendered its franchsies to, and adopted the name of the Connecticut company, its organization, its number of directors. Again, the Connecticut act of 1854 expressly gives to the new company all the rights and powers of the Connecticut charter. 4 Private Acts, 1010.

5. As to the effect of the words appended to Brainerd's subscription :—1st. These words do not relate to his becoming a stockholder, but to the disposition to be made of the money which he as a stockholder should be required to pay. As far as taking the stock was concerned his agreement to do so was absolute. It was a purchase executed. *United Society* v. *Eagle Bank*, 7 Conn., 470 ; *Hartford & N. Haven R. R. Co.* v. *Kennedy*, 12 id., 499, 507, 508 ; *Mann* v. *Cooke*, 20 id., 177, 188 ; *Vermont Central R. R. Co.* v. *Clayes*, 21 Verm., 30. 2d. The acts of the parties show this to have been the understanding. The company set apart the stock to him, elected him a director, and he acted as director. This latter fact shows that he considered himself a stockholder, and that if n fact any conditions had existed he had waived them. *Erie & Waterford Plank Road Co.* v. *Brown*, 25 Penn. S. R., 160 ; *Penobscot R. R. Co.* v. *Dummer*, 40 Maine, 172 ; *Holyoke Bank* v. *Goodman Paper Manufacturing Co.*, 9 Cush., 581. 3d. Being such stockholder, the law, from the relation, creates a positive liability to pay. *Hartford & N. Haven R. R. Co.* v. *Kennedy*, 12 Conn., 499 ; *Same* v. *Boorman*, id., 530 ; *Danbury & Norwalk R. R. Co.* v. *Wilson*, 22 id., 452. He can not be a stockholder, and as such entitled to receive dividends and to hold office, and yet be liable to pay only on a contingency. The charter recognises no such relation. An express agreement by the company that he should, on a certain contingency, cease to be a stockholder, would, where creditors

exist, be wholly void. *Mann* v. *Cooke*, 20 Conn., 189; *Mann* v. *Pentz*, 2 Sandf. Ch. R., 257.

6. But if we lay out of view entirely the fact that he became an absolute stockholder and so liable, and consider his subscription merely as a promise to pay so much money " to be expended east &c," yet he may be compelled to pay. 1st. Admitting that the actual expending of that amount was necessary before he could be called upon to pay, then we say the amount has been expended—not in building the road, we grant, but in surveys. It need not be in building, for the word used is " expended," and the money might be expended in other ways. The words " in building " can not be added. *Fairfield Turnpike Co.* v. *Thorp*, 13 Conn., 173; *Jones* v. *Hoyt*, 25 id., 385; *Wight* v. *Shelby R. R. Co.*, 16 B. Monr., 6. The fact claimed by the defence, that this expense has been paid, makes our case the stronger—for other moneys have been used to pay an expense which Brainerd was specially bound to pay. 2d. But such actual expending was not necessary in order to bind Brainerd. His obligation to pay is wholly independent of the expenditure. The latter is not a condition precedent. *Henderson & Nashville R. R. Co.* v. *Leavitt*, 16 B. Monr. 358. His promise is, from the nature of the case, to be performed first in order of time. That is the true test on this point. 1 Chitty Pl., 321; 1 Archb. N. P., 68, 69; 2 Pars. on Cont., 40, and notes. Consequently the insolvency of the company and the other alleged acts are no defence. The words appended are simply a direction or request as to how his money should be expended.

7. As to the exclusion of Brainerd's testimony given on the Bishop trial:—Lane was not a party to that suit. He did not and could not appear in it, or cross-examine witnesses. There is no privity whatever between them.

HINMAN, C. J. The defendant was factorized as the debtor of the New York and Boston Railroad Company; but his counsel claimed on the trial of this action, which is an action of *scire facias* founded upon that attachment, that there never was a legal organization of any such corporation, and that

therefore there could be no debtors to it, and consequently that there could be no recovery against him or his representatives. The superior court decided that the record of the stockholders' meeting, which was held for the purpose of organization, in pursuance of notice given for that purpose by the persons named in the charter, and authorized to call such meeting when $500,000 of the capital stock was subscribed, was sufficient evidence of the organization; and that, unless the evidence was rebutted by other proof, it was to be taken as true, and the organization thus proved as legal. A very similar question was raised in the late case of *The Litchfield Bank* v. *Church*, 29 Conn., 137. And it was held in that case that the doings of commissioners in calling the first meeting of the stockholders, after they had determined that the whole amount of the capital stock was legally taken, was final upon the question whether the bank was in that respect legally organized. It was said in that case that, as the commissioners were only authorized to call a meeting of the stockholders when the requisite amount of stock was subscribed, they must of course determine when that amount was subscribed, and in so determining must judge of the legality and good faith of the subscriptions. As the court below went no further, perhaps not so far, as this, we think the defendant has no reason to complain of the ruling.

2. Another point raised by the counsel for the defendant was, whether his subscription was binding, in consequence of its having been made upon a subscription book, in the hands of an agent, sent into towns on the line of the proposed railroad east of the city of Middletown for the purpose of obtaining additional subscriptions to enable the company to complete and extend the road, and not upon the regular subscription book, opened for the purpose of receiving subscriptions to the stock by the persons authorized to open subscription books on giving such notice of the times and places when and where they were to be opened, as they, or a majority of them, might deem reasonable. As this proceeding took place after the organization of the corporation, it of course could not in any way affect the legality of that act; and we are therefore not

called upon to consider that question, or whether the defendant, as a party to the irregularity, could take advantage of it, had the first organization been upon subscriptions thus obtained. The defendant not only made the subscription which has been referred to, but he acted as a stockholder, and as such accepted the office of director to which he was appointed by the company. We therefore think he ought now to be deemed to have waived all objection to the form of his subscription, if indeed there ever was any ground of objection to it. A question almost identical with this arose in the late case of the *Danbury & Norwalk Railroad Company* v. *Wilson*, 22 Conn., 435, and the court held that the conduct of a subscriber whose subscription had been obtained in the mode which was here adopted, and who had taken part in a meeting of stockholders, and been chosen a director, precluded him, as between himself and the corporation, in an action for the recovery of installments assessed upon his stock, from disputing the regularity of the organization as a corporation.

3. We perceive no objection to the charge in respect to the meetings of the directors at which the calls for installments were made. The records of these meetings showed a quorum to have been present, and the meetings we think should be presumed to have been legally warned or notified unless the contrary was shown. *Sargent* v. *Webster*, 13 Met., 497.

4. The original charter required four directors to be present at a directors' meeting, to constitute a quorum for the transaction of business. But there was a union of a company chartered by the legislature of Rhode Island with the Connecticut company, under authority from the legislatures of the two states, the new or united company taking the name of the company chartered by this state, and the defendants claimed that after the union, as the Rhode Island charter made no provision as to the number of directors that should constitute a quorum, it became immediately subject to the general rule of law, requiring for that purpose a majority of the directors to be present. But by the agreement of the two companies, which was sanctioned and confirmed by an act of the legislature of Rhode Island, the Woonsocket Railroad Company

was to " surrender its franchises, powers and privileges to the New York and Boston Railroad Company, and become united therewith." Under such a union it seems quite obvious that all the provisions of the Connecticut charter continued in force ; and there is nothing to show that the legislature of Connecticut ever assented to any alteration in this respect. This is clearly so, unless there is a repugnancy between the charters which does not admit of being reconciled. But there is no such repugnancy. The Rhode Island charter makes no provision on the subject. We do not see then why the united company, having all the chartered powers and privileges of both, does not retain this provision of the Connecticut charter, after the union as well as before. Especially does this seem to be so, since the legislature of Connecticut expressly preserved to the united company all the powers, rights, privileges and franchises which had been and might thereafter be granted to the original company in this state. And the new company was also made subject to all the provisions of the original charter. 4 Private Laws, 1010. We think therefore that the court was right in not sustaining this claim.

5. There was appended to Mr. Brainerd's original subscription the words " to be expended between the Connecticut river and the east line of the state," which words, it is claimed, constitute a condition precedent, which has never been performed. And as the corporation has become so hopelessly insolvent that there is no probability that it can be performed, it is insisted that he is absolved from any liability which he might otherwise be under to pay his subscription. The court however instructed the jury, that this was not a condition which prevented Mr. Brainerd from becoming a stockholder. Perhaps it may be true that these words might be used in such a sense as to bear the construction claimed for them, but if so, they are, as we think, equally liable to be construed as words of direction or request; that is, as the expression of a desire on the part of the subscriber to the stock, that the amount of his subscription should be expended east of Connecticut river. Considering then that the object of the company was to obtain

additional stockholders, and that he subscribed to a book that purported to make him a stockholder, that he must have known this, and supposed that by this subscription he did become a stockholder, as otherwise he never could have assented to act as a stockholder, and on the strength of this as a subscription to the stock have accepted the office of director, to which he was chosen clearly upon the idea that he was in fact a stockholder, we are inclined to think that he never intended by these words to annex a condition, on the performance of which alone by the company he intended to become a stockholder. This is the only construction at all consistent with the conduct and acts of the parties at the time and immediately thereafter ; and as they are the words of Mr. Brainerd himself, in a document which he signed apparently with intent to become a stockholder, it is hardly credible that he intended by them to render his subscription nugatory. Besides, if it be admitted that these words constitute a condition, it is a condition for his benefit, which he might waive ; and his accepting the office of director and acting as such would be waiver of it. See *Danbury & Norwalk R. R. Co.* v. *Wilson*, supra. It appears to us therefore that there was no error in the ruling of the court on this point.

7. There was another point made, though not very much pressed, in reference to the rejection of the testimony of the original defendant, on another trial in a former suit between him and a Mr. Bishop. The defendant having died since the commencement of the suit, and the defense having devolved upon his executors, who have been made parties, they attempted to obtain the benefit of his testimony by showing what he testified on the former trial. As that was a trial between different parties, having different rights, and with whom the plaintiff had no privity, and as he had no opportunity to examine or cross-examine the witnesses, it would be contrary to the first principles of justice to bind or in any way affect his interests by the evidence given on that occasion, however identical the questions or some of them may have been with the questions which arise in this case.

We do not advise a new trial on any of the grounds on which it is sought.

In this opinion the other judges concurred.

---

# SUPREME COURT OF ERRORS.

## LITCHFIELD COUNTY, APRIL TERM, 1862.

Present,

Hinman, C. J., Sanford, Butler and Dutton, Js.