CASE No. 1158.

STATE, *EX RELATIONE* THOMPSON, v. THE CHERAW AND CHESTER RAILROAD COMPANY.

1. The terms "stock" and "capital stock" considered, and *held*, that stock when used in reference to corporations and in connection with the privilege of subscribing thereto, means capital stock.
2. An act of the legislature authorized the issue of bonds by a county "in subscription for preferred stock" of a railroad company, and the act provided that the county "shall receive from the company *preferred stock* to the amount of the said bonds, which preferred stock shall bear interest at the rate of seven per cent. per annum." *Held*, that this preferred stock meant capital stock, different from other capital stock only in the preference given to it in the matter of dividends.
3. A certificate of stock tendered by the company to the county setting forth that the county was entitled to the stated amount, but impliedly declaring it not to be capital stock, was not sufficient; and there was no error in a writ of *mandamus* prescribing a form of certificate in substantial compliance with the terms of the act.
4. The judges of the Courts of Common Pleas have power at chambers to issue writs of *mandamus*.
5. A demand by the county made upon the railroad company for certificates of preferred stock, although the demand did not specify the precise character of the certificates, was sufficiently definite to warrant this subsequent proceeding by *mandamus*.
6. The peremptory writ in *mandamus* must conform to the alternative writ, but such conformity existed in this case.

Before MACKEY, J., Chester, July, 1881.

This was a proceeding by *mandamus* on the petition of the State of South Carolina, *ex relatione* W. Banks Thompson, John O. Darby and Waties Pendergrass, as county commissioners in and for the county of Chester, against the Cheraw and Chester Railroad Company, and William Hardin, as president, and David Hemphill as secretary and treasurer of said railroad company. The opinion states the case.

*Messrs. J. & J. Hemphill* and *J. H. Rion*, for appellants.

*Messrs. A. G. Brice* and *S. P. Hamilton*, contra.

March 4th, 1882.   The opinion of the court was delivered by

SIMPSON, C. J.   Under an act entitled "An act to authorize and empower certain counties to issue bonds in subscription for *preferred stock* of the Cheraw and Chester Railroad Company," approved March 14th, 1874, the county of Chester subscribed the sum of $75,000, and in accordance with the terms of said act, duly made, executed and delivered seven hundred and fifty bonds, of the par value of $100 each, in payment of said subscription.   The fourth section of said act provides as follows: " On the completion of the said railroad in the county, the board of county commissioners shall receive from said company an amount of preferred stock of said company equal to the amount of the said bonds, which preferred stock shall bear interest at the rate of seven per cent. per annum."

This road had been completed for more than a year prior to this proceeding, which was commenced on May 13th, 1881, by petition to Hon. T. J. Mackey, Circuit judge, at chambers, praying that a writ of *mandamus* do issue to Hardin, the president of the company, and Hemphill, the secretary, commanding them to execute and deliver certificates for fifteen hundred shares of preferred stock of said company to the petitioners, county commissioners, alleging a demand and refusal, previously made. Upon this petition an alternative writ was granted on May 13th, 1881, requiring the respondents to make and execute a certificate or certificates of " preferred stock " in the Cheraw and Chester Railroad Company to the amount of $75,000,  *  *  *  and to deliver the same to the said county commissioners immediately upon the receipt of the writ, or that they appear before the Honorable Thomas J. Mackey, judge of the Sixth Circuit, sitting at chambers, in and for the county of Chester, at the court house, on the 3d day of June, A. D. 1881, to show cause why they refuse to do so.

On the 1st day of June thereafter an order was granted the petitioners for leave to amend the alternative writ issued on May 13th by inserting the words, " In proper form and manner a certificate or certificates for *fifteen hundred* shares (of the par value of fifty dollars a share) of preferred stock in the Cheraw

and Chester Railroad Company, bearing interest at seven per cent. per annum," in place of the words "certificate or certificates of preferred stock," &c., and also to insert after the word "subscription" in the original writ, the words "being fifteen hundred shares of said stock." This amended writ was served on June 3d, 1881, with leave on the part of respondents to make their return thereto within twenty days; and the hearing was fixed for the 30th day of June. To these writs respondents made return within the time, and while denying that any demand had ever been made upon them for fifteen hundred shares, at the par value of $50 a share, of preferred stock, and that no *mandamus* could lawfully issue from one of the judges of the Circuit Court, they tendered a certificate, which they stated the board of directors had authorized them to prepare, and further stating that they had no power to offer any other. The certificate tendered is as follows: "Cheraw and Chester Railroad Company. Certificate No. 1. $75,000. State of South Carolina. Preferred stock, seven per cent. interest. These presents certify that the Board of County Commissioners of the county of Chester, having issued seven hundred and fifty bonds of one hundred dollars each, of date April 1st, 1875, in pursuance of an act of the General Assembly of the aforesaid State, entitled 'An act to authorize and empower certain counties to issue bonds in subscription for preferred stock of the Cheraw and Chester Railroad Company,' approved March 14th, 1874, are holders of seventy-five thousand dollars of preferred stock of the Cheraw and Chester Railroad Company, which said stock bears interest at the rate of seven per centum per annum from the day of the completion of said railroad in said county, to wit, the 1st day of June, 1880, to be paid prior and in preference to any dividend upon the capital stock of the said company. Witness the hands of the president and treasurer, and the corporate seal. May 26th, A. D. 1881."

Judge Mackey held this certificate insufficient, as it failed to show the number of shares in the capital stock of the company which the county was entitled to, and leaving it doubtful whether it was intended as a certificate of indebtedness of the company to the county, or a certificate showing the number of

shares that the county held in the capital stock of the company ; and he issued a peremptory *mandamus* commanding the respondents without delay to deliver to the petitioners a certificate in the following form :

" This is to certify that the county of Chester is entitled to *fifteen hundred shares* in the capital stock of the Cheraw and Chester Railroad Company.   This certificate of fifteen hundred shares of the capital stock of the Cheraw and Chester Railroad Company is preferred stock issued by virtue of the act of the General Assembly of the State of South Carolina, approved March 14th, 1874.   Witness the hands of the president and treasurer with the corporate seal."

From this peremptory *mandamus* the respondents to petition below have appealed on the following grounds :

1. Because the cause was heard and the judgment rendered at chambers.

2. Because there was no proof of any previous demand upon respondents for a certificate or certificates of fifteen hundred shares of the capital stock, or preferred stock, or preferred capital stock of said railroad company, but it was proved on the contrary that no such demand had ever been made.

3. Because the relators are not entitled to fifteen hundred shares of capital stock, or preferred stock, or preferred capital stock of the Cheraw and Chester Railroad Company.

4. Because the alternative writ of *mandamus* does not state sufficient facts upon which to base relators' claim to the relief demanded, nor does it set forth the particulars in which they have been wronged.

5. Because the peremptory writ of *mandamus* does not conform to the alternative.

6. Because the peremptory writ requires the respondents to execute and deliver a certificate in a particular form therein set forth, contrary to law.

7. Because respondents had already tendered to the relators, as county commissioners as aforesaid, a certificate for $75,000 of preferred stock of said railroad company in conformity with law.

The prominent questions involved in this appeal are, whether the respondents, under the facts and law, are entitled to a certifi-

cate from appellants representing that they have shares in the capital stock of appellants' company? And, if so, whether the certificate tendered by appellants, or the one ordered by the court, is the proper certificate? This question must be determined upon the construction which shall be given to the act of the legislature above referred to, under which the county of Chester has become connected with this railroad.

The words in that act to be interpreted, and upon which the question depends, are "preferred stock." What was meant by these words is the question. The act authorized the counties to subscribe for "preferred stock" and the county commissioners to receive certificates of "preferred stock" for such subscription. Did the legislature intend by this that the county should have shares in the capital stock of the company, or that it should become simply a preferred creditor, or occupy some other relation not well defined?

The first rule in ascertaining the intent of an instrument, whether it be an act or any other paper, is to go to the meaning of the words. What then is the meaning of the term "stock"? Stock in its general acceptation, when applied to business, according to lexicographers, means money invested in business. Capital stock and capital are synonymous terms, hence capital stock. In this general sense it is money invested in business operations, whether that business be conducted by a single individual, a partnership, a corporation, or government; and it makes no difference how the money is obtained, whether by labor, by borrowing, or otherwise. If the money is borrowed it is represented in the hands of the lender by bonds, notes or other papers, with the government by governmental securities, sometimes called stocks. But in such cases the lender is not a stockholder in the business. So far as the party himself is concerned, if the money borrowed or otherwise obtained is invested in his business, it his capital or stock in trade. This is the general meaning of the term.

But when it is used in connection with a chartered or joint stock company, made up of individuals, it has a somewhat more limited signification. It means then the money advanced by the corporators or members as the capital, which is usually, for con-

venience, divided into equal amounts called shares, for which each member is entitled to a certificate, showing the number of shares which he has in the company; or, in other words, the amount of money he has furnished to the common stock; which certificate is the evidence of his being a stockholder.  *Field Corp.* § 123.

The word "stock" in connection with a corporation composed of numerous corporators united in one organism by charter, seems to have this technical meaning, in the limited form above given; and although a corporation as well as natural individuals engaged in business may borrow money, and indeed are often compelled to do so, yet the money thus borrowed is not understood to be stock, except in the general acceptation above given.  The corporators are not entitled to distinct shares in such money, nor are the bonds or other evidences of indebtedness given by the company in such cases to the lender called the stock, capital or otherwise, of the company.

Our opinion is, that when the term "stock" is used with reference to railroad or other corporations, especially when it is used in connection with the privilege to "*subscribe*" thereto, it means capital stock.  We have not been pointed to a case or an authority where, with such surroundings, it could be or has been legitimately interpreted otherwise.  There is no other stock in a business company, the basis of which is money, except capital stock; if so, it has not yet received a name or distinctive feature.

Would a privilege to subscribe to stock in a company chartered and organized for business purposes, ever be interpreted by any one to mean a privilege to lend money to such company in the sense of becoming a creditor?  Such a conception would scarcely enter the mind of the most experienced in the ways of such companies if invited to subscribe to the stock.  The common mind would never think of such an idea, and the rules of interpretation require that the ordinary and well understood meaning of words should be given to them, unless they are controlled and directed by the context, or by the demand of other words, or other parts of the instrument, when the whole is construed together.  If Chester county is not a stockholder or shareholder, what relation does it occupy to the company?  If it be

that of a creditor, where is the evidence of the debt, and when is the debt to be paid? There is nothing promised except the interest, and that is contingent. If the county is a stockholder, what other stock has the company but capital stock?

Next, what does the word "preferred" mean? This word is relative; it refers to something else, and it means that the thing to which it is attached, whatever that may be, has some advantage over another thing of the same character, which but for this advantage would be like the other. If, then, the term "stock," when employed in connection with railroad or other chartered companies, means money invested in the business of the company, represented by certificates of shares, known as capital, or capital stock, and there is no other known stock belonging to such companies, having a distinct and separate characteristic from capital stock, what effect can the word "preferred" have when attached to it, except to indicate that in that case it *is* to have some advantage which it would not have otherwise? In other words, in such case can it be anything else than preferred capital stock, or a preferred interest in the money paid in by stockholders, divided *into* shares and represented by certificates showing the shares of each holder? The word "preferred" used in the act intended certainly to give the counties some advantage over others holding a similar interest, and occupying (without that word) the same position to the company as the counties, and who, but for the county being preferred, would stand with them on the same plane.

Now, have the counties any preference over creditors? The only preference provided for, is the payment of seven per cent. It does not appear that other creditors are entitled to less; the county cannot therefore be a creditor. The act then must have intended to put the counties on the same plane with the other stockholders, with the advantage (over the others) of being preferred in the particular mentioned.

We think that when the legislature allowed the counties to "*subscribe for preferred stock*" in this company, it intended that they might subscribe to the capital stock thereof, their stock to be preferred over the common stock by being entitled to seven per cent. interest out of the dividends in advance of the others.

Now, as to the certificate which should be issued to the county commissioners. Having held that the words "preferred stock" in the act, accompanied with the word "subscribe," indicated the capital stock, the same words employed in the certificate would mean the same thing there; and if the railroad authorities in the certificate tendered had followed the language of the act strictly, without additional expressions throwing doubt upon their understanding, or rather indicating that they did not intend the county to be regarded as shareholders in the capital stock of the company, then the certificate would have been a compliance with the act and in strict performance of the duty imposed upon them, and in such case they would have been exempt from this writ. But they added to the words of the act the following: "Prior and in preference to any dividend upon the *capital stock* of the company." This was drawing a distinction not only as to the *preference*, but as to the essential character of the stock. This was in effect denying that the county was a shareholder in the capital stock, and impliedly asserting that it held some other position. Now, it is not for this court to speculate as to what underlies this controversy, but whatever may be behind it, the parties in conflict, either present or prospective, have a right to place themselves in proper position—the position to which the law entitles them.

We think the legislature means that the counties subscribing should have a certificate showing that they were stockholders in the capital stock of the railroad company; that the certificate tendered by the company as at present couched fails to show this—in fact it implies otherwise. We think further that the certificate ordered by Judge Mackey expresses the idea plainly and fully as to this right, and, therefore, that his order should be affirmed.

The cases referred to by the counsel of appellant in which the terms "preferred stock" are concerned, have been examined and considered. We have found nothing in any of these cases antagonistic to the position taken above. It seems to be admitted in all the cases that the holders of preferred stock are shareholders or stockholders in the stock of the company. The question which seems to have been discussed in many of the cases

was, whether the company had the power to create preferred stock. In others, what were the rights of the holders of such preferred stock as to the interest or dividend allowed on such stock. And in some of them, what control such stock had in the management of the company. In no case was it denied that they were stockholders, or claimed that they were simply creditors.

Most of the cases relied upon by appellant will be found reviewed somewhat in *Green Br. U. V.* 164 and notes. See the cases there of *St. John* v. *The Erie R. R. Co.*, 22 *Wall.* 136 ; *Williston* v. *Mich. Southern & Ind. R. R. Co.*, 13 *Allen* 400 ; *Hazlehurst* v. *Savannah G. & N. A. R. R. Co.*, 43 *Ga.* 13 ; *Rutland & Burlington R. R. Co.* v. *Thrall*, 35 *Verm.* 536 ; *Hoyt* v. *Quicksilver Mining Co.*, 17 *Hun* 172 ; *Kent* v. *Quicksilver Mining Co.*, 12 *Hun* 53 ; *Bailey* v. *R. R. Co.*, 17 *Wall.* 99 ; *Taft* v. *R. R. Co.*, 8 *R. I.* 311. Some of these were the cases cited for appellant. They involved almost entirely questions of the character above stated. In the discussion of these questions the " preferred stock " is constantly referred to as represented by shares, and in no case are the holders of such preferred stock regarded as creditors simply. Such stock has often been resorted to, say these cases, to raise money, when the corporation has become crippled, and disaster and failure seemed near at hand ; and with the view to raise the money, this stock has been allowed some advantage, some preference over the common stock.

" The issue of preferred stock," says Mr. Pierce, " is a mode by which a corporation obtains funds for its enterprise without borrowing money or contracting a debt. Its holders are a privileged class who are entitled to dividends of a certain per cent., payable out of the net earnings, in priority to any dividends upon ordinary stock." *Pierce Rail. L.* 124.

We come next to the exceptions to the mode of procedure, &c., in this case. The first raises the question of the power of the judge to hear application for *mandamus* at chambers. This power is expressly conferred on the judges of the Court of Common Pleas by statute. *Gen. Stat.* 547.

The next raises the question of demand. It seems that demand was twice made on the officers of the company for the certificate.

It is true the demand did not specify the precise character of the certificate which the commissioners claimed to have issued, but it was a demand for certificates of " preferred stock," and we think was sufficiently definite to warrant this proceeding, upon failure to respond on the part of the company.

The appellants further except: " Because the peremptory writ of *mandamus* does not conform to the terms of the alternative writ." The alternative writ in *mandamus*, is required to sustain the same relation to such proceedings as a declaration does to the ordinary common law action. *High Extr. Rem.* §§ 449, 530. In it is found the relator's cause of action and the relief which he seeks. It combines the double function of process and pleading. It serves to bring the respondent into court as well as to apprise him definitely of the ground of action against him. The peremptory writ is the final process or judgment, and it must conform to the alternative; otherwise it is defective. In the amended alternative writ in this case, the relator claimed a certificate of fifteen hundred *shares* of preferred stock under the act March 14th, 1874. The peremptory writ substantially conforms to this claim, and the certificate prescribed by the judge is, in substance, in accordance with the mandate of the writ.

It is the judgment of this court, that the order of the judge below be affirmed.

McIver and McGowan, A. J.'s, concurred.