# THE BALTIMORE AND OHIO RAILROAD COMPANY *vs.* THE COUNTY COMMISSIONERS OF HOWARD COUNTY.

*Liability for Wrongful Act Imposing Liability upon Another—Contribution Between Wrongdoers—Municipality Made Liable for Unsafe Highway Entitled to Indemnity from Party Creating the Nuisance—Evidence.*

Whenever the wrongful act of one person causes a liability towards third parties to be imposed upon another person, who discharges that liability, the latter is entitled to indemnity or contribution from the person guilty of the actual wrong, provided he did not participate in doing it.

Thus, where the wrongful act of a party renders a highway unsafe for travel, and a person injured thereby recovers a judgment against the municipality, whose duty it was to keep the highway safe, the municipality is entitled to indemnity from the wrongdoer. And in such case, the fact that the municipality was negligent in failing to repair the road after it had been made unsafe does not render it a joint wrongdoer so as to prevent contribution; and it makes no difference that the injury to the traveller was not caused solely by the negligence of the first wrongdoer.

In changing the location of its tracks over a stream at the same point where there was a county road crossing it, the defendant railroad company changed the grade and location of the highway and made it dangerous by filling it in so as to leave the wing wall of the bridge insufficiently guarded. The highway had previously been safe for travel. The approach to the bridge remained in that dangerous condition for three years, when a traveller at night drove over the unprotected wall of the bridge and was killed. His widow brought an action against the County Commissioners and recovered damages for the death so occasioned, because the Commissioners had neg-

lected their statutory duty to keep the highway in a safe con-
dition for travel. The judgment was paid by the County
Commissioners, who then brought this action to recover in-
demnity against the railroad company, on the ground that the
highway had been made dangerous by its wrongful act. It
was held on a former appeal that the County Commissioners
and the railroad company were not joint *tort feasors* in creat-
ing the nuisance, but that the railroad company was primarily
liable therefor. The case was remanded for a new trial partly
because the trial Court had ruled that the amount of the judg-
ment paid by the Commissioners was the measure of dam-
ages, and this was error, since the railroad company had not
been notified of the action or taken part in the defense; but
that the measure of damages was the amount of the loss suf-
fered by the plaintiff in the action for death not exceeding
the verdict rendered. Upon the second trial, the defendant
offered evidence to show that the highway was dangerous be-
fore the changes made in it by the defendant, and the plaintiff
offered evidence to the contrary. *Held,* that the jury was
properly instructed that the burden was upon the plaintiff to
show that the defendant created the dangerous condition of
the road and that the same was the cause of the accident in
question.

*Held,* further, that the actual knowledge by the County Com-
missioners of the dangerous condition of the road at the place
where it had been changed by the defendant for a long time
before the accident, and their failure to repair it, do not con-
stitute them joint *tort feasors* with the defendant so as to pre-
clude recovery.

*Held,* further, that evidence is admissible to show the condition
of the approach to the bridge before the changes were made by
the railroad company, because this evidence bore directly upon
the question as to whether the unsafe condition was caused by
the railroad company or not.

*Held,* further, that since the railroad company was liable to the
County Commissioners for the damages caused to the widow
of the deceased to an amount not exceeding the verdict recov-
ered by her, evidence as to his earning capacity is admissible.

After the accident which gave rise to the suit against the County Commissioners, an agreement between them and the railroad company was made which provided that if the latter would do certain things, it should be relieved from further expense in connection with the public roads in that vicinity, and another agreement providing, in consideration of the railroad company's having widened the road under its bridge, the Commissioners relieved it from further responsibility concerning the construction and maintenance of said roadway. *Held.* that these agreements do not affect the rights of the plaintiff growing out of the defaults by the defendant.

*Decided June 22nd, 1910.*

Appeal from the Circuit Court for Carroll County (THOMAS, C. J., and FORSYTHE, J.).

*Defendant's 5th Prayer.*—That if the jury shall find that the west or upper wing wall to public bridge mentioned in the evidence at the time of the injury to Dr. Hill stood as high above the ground and roadbed in the approach to said bridge, and at the point over which Dr. Hill and his buggy were precipitated, if the jury so find, as it did in 1900 or before the Baltimore & Ohio Railroad Company began its improvement at Ilchester, then their verdict ought to be for the defendant, under the pleadings in this case. (*Granted.*)

*Defendant's 6th Prayer.*—That under the pleadings in this case before the jury can find a verdict against the defendant in this case, they must find a preponderance of evidence that the Baltimore & Ohio Railroad Company or its agents and servants "dumped or placed large quantities of earth and stone" in the public road between the two bridges mentioned in the evidence, "thereby raising the surface thereof as it approached said bridge above the level it had previously been, and by so doing, rendered said road at the approach to said bridge unsafe and dangerous, by reason of the fact that the said wing walls of the abutments above men-

BALTO. & OHIO R. CO. vs. HOWARD CO.   407

Md.]                    Statement of the Case.

tioned no longer extended above the bed of said road of sufficient height to guard the traveling public from going out of said road over the embankments thereof into the river below, a distance of about eighteen feet.   (*Granted.*)

*Defendant's 7th Prayer.*—That under the pleadings in this case, the jury are not at liberty to consider the abutment or the position of the abutment of the railroad bridge in the old County road as mentioned in the evidence, as an element or condition rendering the approach to the said County bridge unsafe or dangerous to public travel.   (*As offered.*)

*Defendant's 7th Prayer.*—That, under the pleadings in this case, the plaintiff is not entitled to recover because of the placing of the abutment of the railroad bridge in the old County road as mentioned in the evidence.  (*Granted as modified.*)

*Defendant's 8th Prayer.*—That the plaintiff is not entitled to recover in this cause, unless the jury shall find that the Baltimore and Ohio Railroad Company was solely responsible by its negligence for the accident and death of Dr. Hill. (*Rejected.*)

*Defendant's 9th Prayer.*—That the jury cannot find a verdict for the plaintiff, unless they find that the Baltimore and Ohio Railroad Company or its servants or agents in making the changes in the approach to the County bridge in question, created a condition dangerous for public travel to those using due care and caution, and shall further find that the accident to Dr. Hill was caused by such dangerous condition so created, and that the burden is on the plaintiff to show by a preponderance of evidence that the defendant or its agents or servants created such a dangerous condition in the approach to said County bridge and that such dangerous condition so created (if the jury find the same) caused the death of Dr. Hill.   (*Granted as modified.*)

*Defendant's 17th Prayer.*—That the jury are not at liberty to consider the testimony of T. Hunt Mayfield as to the amounts of costs paid by the plaintiff in the suit of the State

of Maryland, use of Agnes Hill, against the County Commissioners of Howard County. (*Granted.*)

*Defendant's 18th Prayer.*—That the jury are not at liberty to consider any evidence on the part of the plaintiff relative to the counsel fees of $750 paid by the County Commissioners of Howard County to its attorneys in the suit of the State of Maryland, use of Agnes Hill, against the County Commissioners of Howard County. (*Granted.*)

*Defendant's 19th Prayer.*—That there is no legally sufficient evidence in this cause of any notice being given to or had by the defendant of the pendency of the suit of the State of Maryland, use of Agnes Hill, against the County Commissioners of Howard County, the now plaintiff, for damages resulting to the said Agnes Hill by reason of the death of the said Alexander Scott Hill, mentioned in evidence, nor of any participation by said defendant in the trial or conduct of said suit. (*Granted.*)

*Defendant's 20th Prayer.*—That there is no evidence in this cause from which the jury may find that the fence or railing along the up-stream .edge of the approach to the County bridge on the Howard County side mentioned in evidence as having been there prior to the Baltimore and Ohio Railroad Company's improvements at Ilchester was ever removed or taken down by the defendant, its agents, servants, employees or contractors; and that the jury are not at liberty to attribute the removal or destruction of said fence or railing to the defendant. (*Granted.*)

*Defendant's 21st Prayer.*—That under the pleadings in this case the plaintiff cannot recover unless the jury shall find from the evidence that the accident resulting in the death of Alexander Scott Hill was occasioned by the failure to have a sufficient guard or railing at the place where the accident happened; and shall further find that the necessity for a guard or railing at the place where the accident happened was caused by the filling in of the county roadway at the place where the said Alexander Scott Hill went over the

up-stream wing wall with horse and buggy as testified to in evidence and that such filling in was done by the defendant or its agents or servants. (*Granted as modified.*)

The cause was argued before BOYD, C. J., BRISCOE, BURKE and URNER, JJ.

*James A. C. Bond* and *Francis Neal Parke,* for the appellant.

*Joseph L. Donovan* and *Guy W. Steele,* for the appellee.

BURKE, J., delivered the opinion of the Court.

This is the second appeal in this case. The first case is reported in 111 *Md.* 175. As the record now before us shows that the pleadings are the same and that the plaintiff offered substantially the same evidence to support its case as it did at the former trial, it is unnecessary again to notice the pleadings or to discuss at any great length the plaintiff's evidence. The opinion in the former case, in which the facts relied on by the plaintiff are set out by JUDGE BRISCOE, dispenses with the necessity of re-stating them. We need only say that the evidence in the present record tends to support the declaration, and, therefore, under the principles announced in the first appeal the plaintiff would be entitled to recover, unless there be found in this record some new facts to take the case out of the principle of the former decision. The appellant insists that this record does disclose such facts, and that the legal effect of the new evidence is to bar the plaintiff's right to maintain the suit.

The record presents for review eight bills of exceptions. Six relate to the ruling of the trial Court on questions of evidence; the seventh to the action of the Court in sustaining the plaintiff's special exceptions to the appellant's eleventh prayer; and the eighth to the action of the Court upon

certain prayers submitted by the parties at the conclusion of the whole case.

The first and sixth exceptions are abandoned. There was no error in the rulings on the second and third exceptions. In these the Court allowed the plaintiff to prove by James E. Hobbs, the condition of the bridge on the Howard County side just before the railroad began its improvements, and the condition existing at the approach to that bridge after the railroad had finished its work. This evidence bore directly upon one of the material issues raised by the pleadings, to wit, the unsafe condition at that point and who created it, and was properly admitted. The fourth exception was taken to the action of the Court in permitting the plaintiff to prove that it had paid the judgment recovered against it because of the death of Doctor Hill. The declaration alleged that the plaintiff had paid this judgment, and we see no possible reason why it should not have been permitted to prove that fact. In cases of this character it is always competent to prove the earning capacity of the deceased, as reflecting upon the question of damages, and the amount actually earned is always evidence. There was, therefore, no error in the ruling on the fifth exception permitting Mrs. Hill to be examined as to her husband's income from his practice.

This brings us to the rulings on the prayers wherein the real questions in the case arise. The plaintiff offered four prayers. The Court granted its first and second prayers, rejected its third and granted its fourth prayer as modified. The defendant offered twenty-eight prayers. The Court refused its first, second, third, fourth, seventh, eighth, tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, twenty-second, twenty-third, twenty-fourth, twenty-fifth, twenty-sixth, twenty-seventh and twenty-eighth prayers. The Court modified and granted as modified the defendant's fifth, sixth, seventh, ninth and twenty-first prayers, and granted as offered the seventeenth, eighteenth, nineteenth and twentieth prayers. The legal propositions upon which the appel-

lant relies for a reversal of the judgment are really presented
in its first, second, third, fourth, tenth, eleventh, twenty-
second and twenty-seventh prayers.

The jury were instructed by the plaintiff's first prayer
that if they found that the location of the public highway in
Howard County as it approaches the County bridge, men-
tioned in the evidence, was altered by the defendant in mak·
ing the alterations and improvements to its road bed men-
tioned in the evidence, and that such change in the location
of said highway rendered the approach to said bridge unsafe
and dangerous for travel, and should further find that a cer-
tain Alexander Scott Hill while approaching said bridge in
1906 and using due care on his part was killed by reason
of said unsafe condition of the approach to said bridge, and
that the widow of the said Alexander Scott Hill brought suit
in the name of the State of Maryland against the County
Commissioners for damages suffered by her by the death of
the said Alexander Scott Hill, and recovered judgment, and
that said judgment had been paid by the plaintiff, then the
plaintiff was entitled to recover. By its second prayer the
jury were told that if they found that the public highway
mentioned in the evidence as it approached the bridge over
the Patapsco river, at Ilchester, in Howard County, was rea-
sonably safe to all persons travelling thereon while using due
care before the defendant re-located its road, and should fur-
ther find that the defendant in making the changes and re-
location of its tracks and railroad bed at Ilchester, as testi-
fied to by the witnesses, caused said highway to be so filled
in with earth and stone as to make the approach to said
bridge no longer reasonably safe for all persons travelling on
said highway while using due care, and should find that the
defendant negligently permitted the approach to said bridge
on said highway to be unsafe and unguarded and unprotected,
and should find that by reason of this unsafe, unguarded and
unprotected condition a certain Alexander Scott Hill, while
traveling on said highway and using due care, was killed as

testified to in the evidence, and should further find that his widow a certain Agnes Hill brought suit against the plaintiff in the name of the State of Maryland for her use, and recovered a judgment against the plaintiff for damages suffered and sustained by her, by reason of the death of her husband, and should further find that said judgment had been satisfied and paid by the plaintiff, then the plaintiff was entitled to recover, and the verdict of the jury must be for it, although the jury might find that the place where said accident occurred was outside of the travel portion of the County road as it existed prior to the alterations thereof and made therein by the defendant. The plaintiff's fourth prayer is upon the measure of damages. By this prayer the Court limited the amount of recovery to such damages as were sustained by Mrs. Hill as the direct consequence of the death of her husband, not exceeding however the amount paid by the plaintiff on account of the judgment against it offered in evidence and interest on such judgment to the date of payment. This being a suit for indemnity, and the defendant not having been notified of the suit in which the judgment was recovered and requested to come in and defend, and not having participated in that suit, the limitation placed by the Court upon the extent of recovery was proper. The prayer was not seriously objected to by the appellant, nor do we see any reason why upon the facts it should not have been granted. It would certainly not have been proper to have permitted the plaintiff to have profited by the death of Doctor Hill.

The plaintiff's first and second prayers are identical with those approved in the former case, and were properly granted, unless the new evidence, to which we will presently allude, leads to a different conclusion of law.

The defendant by its first, second, third and fourth prayers sought to withdraw the case from the jury, and in their support relies upon the additional evidence found in this record, which it is claimed differentiates this from the for-

mer case and makes it the duty of the Court to declare as a matter of law that the plaintiff cannot recover.

The defendant completed its work at Ilchester in 1903, and according to the evidence of the plaintiff created an unsafe and dangerous condition at the approach to the bridge across the Patapsco river in consequence of which Doctor Hill lost his life on the 22nd of January, 1906. Its evidence tended to prove that the approach to this bridge at the place of the accident was safe before the defendant began its work, and that by reason of certain changes made by it at that point it rendered the place dangerous and that it left it in an unsafe and dangerous condition. The new evidence introduced by the defendant tended to show that the plaintiff first created the dangerous place where Doctor Hill was killed, and that the changes made by the railroad company but slightly increased the existing danger. The jury was properly instructed as to the legal effect of this evidence, the truth of which was denied by the plaintiff, by the ninth prayer granted on behalf of the defendant. That prayer told the jury that they could not find for the plaintiff, unless they found that the Baltimore and Ohio Railroad Company or its servants or agents in making the changes in the approach to the county bridge in question created a condition dangerous to the public travel to those using due care and caution, and should further find that the accident to Doctor Hill was caused by such dangerous condition so created, and that the burden was upon the plaintiff to show by a preponderance of evidence that the defendant or its agents or servants created such a dangerous condition at the approach to said county bridge, and that such dangerous condition so created (if the jury found the same) caused the death of Doctor Hill. This prayer gave the defendant all the benefit on this point to which it was entitled, if the jury found its testimony to be true.

The other additional evidence is that during the period from 1903, the date when the railroad completed its improve-

ments, to Doctor Hill's death, in January, 1906, the plaintiff had actual knowledge of the dangerous condition of the road at the place where the accident occurred and failed to repair it.   This evidence is uncontradicted, and the proposition asserted by the appellant is that this *actual knowledge and failure to discharge its duty of repairing the highway,* constitute the plaintiff a *joint tort feasor* with the defendant with respect to the death of Doctor Hill, and, therefore, there can be no recovery in this case.   This is really the only substantial question to be decided, and the briefs of the learned counsel give evidence of much labor and diligent search and examination of the cases bearing upon the question.   But we cannot give our assent to the contention of the appellant.   In our opinion, the facts do not bring the case within the rule which denies indemnity or contribution among *tort feasors.* Actual knowledge and failure of duty are not sufficient to invoke the application of the rule.   There must be joint participation in the tort and the parties must be in equal degree guilty in a case of this nature.

The general rule is that wherever the wrongful act of one person results in liability being imposed on another, the latter may have indemnity from the person actually guilty of the wrong. *Pearson* v. *Skelton,* 1 M. & W. 504; *Wooley* v. *Batte,* 2 C. & P. 419; *Baily v. Bussing,* 22 Conn. 455.   This rule is, however, subject to an important qualification or exception, viz, that as between *actual tort feasors* the law will not enforce contribution or indemnity.   This doctrine was first formulated in *Merryweather* v. *Nixan,* 8 T. R. 186, where contribution was denied where it appeared that both parties actually participated in an act of conversion.   The general principle is that which allows contribution, and the doctrine of *Merryweather* v. *Nixan, supra,* is an exception to the rule, and is limited to cases where the party seeking contribution or indemnity is *in pari delicto* with the other.   The Courts do not favor the extension of this rule, and have shown a decided disposition to confine the exception to cases clearly

falling within it. LORD HERSCHELL, in *Palmer* v. *Wick, etc.*
(1894), A. C. 318, referred to *Merryweather* v. *Nixan,* and
said: "It is now too late to question that decision in this coun-
try; but when I am asked to hold it to be a part of the law
of Scotland, I am bound to say that it does not appear to me
to be founded on any principle of justice or equity, or even
a public policy which justifies its application to other coun-
tries." And in *Betts* v. *Gibbins,* 2 Ad. and Els. 57, DEN-
MAN, C. J., said: "The case of *Merryweather* v. *Nixan,* 8
T. R. 186, seems to me to be strained beyond what the deci-
sion will bear." The cases where municipal corporations
have sued the primary wrongdoer and have recovered may be
found in the text books and reported cases in great numbers.
We have found no case, nor have we been referred to any, in
which the right of recovery has been denied under the excep-
tional rule invoked by the appellant, unless it appeared that
as between the corporation and and the author of the wrong
the parties were *in pari delicto.* The rule to be applied to
the many conditions of fact arising in such cases is stated as
follows, with accuracy and clearness, in *Gray* v. *Boston Gas
Light Company,* 114 Mass. 152: "When two parties, acting
together, commit an illegal or wrongful act, the party who
is held responsible in damages for the act cannot have in-
demnity or contribution from the other, because both are
equally culpable, or *particeps criminis,* and the damages re-
sult from their joint offense. This rule does not apply when
one does the act or creates the nuisance, and the other does
not join therein, but is thereby exposed to liability and suf-
fers damage. He may recover from the party whose wrong-
ful act has thus exposed him. In such case the parties are
not *in pari delicto* as to each other, though as to third persons
either may be held liable. The numerous cases in our own
reports are analogous, where towns, having been held liable
for an unsafe condition of the highway, have recovered from
the persons whose acts caused the unsafe condition. The
reasons given in these cases are conclusive on this point. In

*Lowell* v. *Boston and Lowell Railroad Company,* 23 Pick. 24, the authorities were fully considered, and upon general principles it was held the town could recover, the parties not being *in pari delicto.* No distinction is there made, that the liability is cast upon the town by statute, and not by the common law, and no such distinction is noticed in any of the cases which follow it. *Lowell* v. *Short,* 4 Cush. 275; *Swansey* v. *Chance,* 16 Gray, 303; *Milford* v. *Holbrook,* 9 Allen, 17; *West Boylston* v. *Mason,* 102 Mass. 341. In the last case, it was said the only fault of the town was the failure to remedy a nuisance which the defendant had created. Nor can there be any such distinction in principle. The ground of the action is that the defendant has by his own unauthorized act exposed the plaintiff to a liability, and it is immaterial whether the liability is imposed by force of a statute or by the rule of the common law. In either case the plaintiff is held liable by inference of law, and not by reason of his active participation in the act which was the occasion of the injury. *Pearson* v. *Skelton,* 1 M. & W. 504. See also *Chicago City* v. *Robins,* 2 Blck. 418; *Bailey* v. *Bussing,* 28 Conn. 455." 2 *Dillon on Munc. Corp.,* sec. 1035, and cases referred to in note.

Tested by this rule, we cannot hold upon the evidence in this record as a matter of law that the parties, as between themselves, were equally culpable, or *particeps criminis,* with respect to the nuisance or dangerous condition of the road which resulted in the death of Doctor Hill. Upon the case made by the plaintiff the road was safe at the time the defendant began work and that the defendant was the sole actual wrongdoer and creator of the dangerous condition in the highway. Of course the plaintiff under the circumstances was greatly negligent in not repairing the road, and was liable for the unfortunate result which followed; but the Court could not say as a matter of law upon the facts before it that it participated with the defendant in the creation of this

dangerous nuisance or that it was equally guilty with it with respect to the consequences which ensued.

The cases of *Hartley* v. *Mayor, etc., of Rockdale,* 2 King's Bench Div. 594, and the *City of Galveston* v. *Gonzales,* 6 Texas Civ. App. 538, do not support the defendant's position. The first was not an indemnity case, and nothing is there said in conflict with the views we have expressed. In the latter case the evidence showed that the parties jointly participated in the unlawful act, and hence a recovery was denied.

The defendant's first, second, third and fourth prayers, by which the Court was asked to direct a verdict for the defendant, were properly refused. The defendant's seventh prayer as offered asked the Court to instruct the jury that under the pleadings the jury were not at liberty to consider the abutment or the position of the abutment of the railroad bridge in the county road as mentioned in the evidence as an element or condition rendering the approach to said bridge unsafe or dangerous to public travel. The Court modified this prayer so as to read as follows: "That under the pleadings in this case the plaintiff is not entitled to recover because of the placing of the abutment of the railroad bridge in the old county road as mentioned in the evidence." It is manifest that the defendant was not injured by the rejection of its seventh prayer, as the one granted gave the defendant all the benefit upon the subject-matter of the prayer to which it was entitled.

The defendant's eighth prayer was properly rejected. It asked the Court to say that the plaintiff could not recover unless the jury found that the defendant "was solely responsible by its negligence for the accident and death of Dr. Hill." Such a rule as this would prevent a recovery in every indemnity case growing out of negligence, because as to third parties the negligence of the plaintiff is either admitted or established by judgment. For the same reason the tenth,

twelfth, thirteenth, fourteenth and fifteenth prayers, which embodied the same proposition, were rightly refused.

As the defendant's sixteenth, twenty-third, twenty-fourth, twenty-fifth, twenty-sixth, twenty-seventh and twenty-eighth prayers are based upon theories of the case in conflict with the views we have expressed in discussing the first, second, third and fourth prayers, we approve the action of the trial Court in rejecting them. By the granted ninth prayer, the defendant got the full benefit of the defense it *intended* to present by its twenty-second prayer, and for this reason it suffered no injury by its rejection.

The rejection of its eleventh prayer is the only other matter of which the defendant complains. That prayer is here transcribed: "If the jury shall find from the evidence that in 1903, or prior thereto, the Baltimore and Ohio Railroad Company in constructing an overhead railroad crossing at Ilchester changed and diverted the old county road to the location of the present roadway between the railroad's overhead bridge at Ilchester and the Howard County entrance to the county bridge over the Patapsco at Ilchester; and that said new roadway and approaches to the Howard County entrance to said bridge remained, within the knowledge of the County Commissioners of Howard County, in the same condition from 1903, until the happening of the accident resulting in the death of Doctor Hill, and during the said period were used by the traveling public with the knowledge of the said County Commissioners; and shall further find from all the evidence in the case that prior to the happening of the accident resulting in the death of Doctor Hill, the County Commissioners of Howard County had accepted said roadway as changed and diverted by the defendant between the overhead railroad bridge and the entrance to the Howard County side of said bridge over the Patapsco River at Ilchester as the completed part of the public highway in Howard County, if the jury so find, then the verdict of the jury must be for the defendant in this case."

The plaintiff specially excepted to this prayer, first, because, under the pleadings in the case, there was no evidence to show that the defendant accepted said road and the approach to said bridge; and secondly, because there is no evidence in the case legally sufficient to show that the plaintiff accepted the said roadway as changed or diverted by the defendant.   The Court sustained this exception.

The record shows that on the 29th of May, 1906, the parties entered into the following agreement: "Whereas, the Baltimore and Ohio Railroad Company, hereafter called the party of the first part, made certain changes in the line of their tracks at Ilchester Station, Maryland, which necessitated certain changes in the wagon roads at that point; and whereas, the necessary changes in the wagon roads at this point have not, up to this time, been properly completed to the satisfaction of the County Commissioners of Howard County.   It is hereby agreed that the party of the first part will widen the wagon road, passing under its bridge at Ilchester Station, to a width of thirty feet on top from the north side of the bridge to a distance of 210 feet south.   It is further agreed that the County Commissioners will, when this work is completed, give to the party of the first part a formal acceptance, relieving the party of the first part from further expense, in connection with the construction or maintenance of the county roads in that vicinity."

. On the 11th of February, 1908, they entered into another agreement, as follows: "This agreement, made this 11th day of February, in the year 1908, by and between the County Commissioners of Howard County, as the first part, and the Baltimore and Ohio Railroad Company, the second part: Witnesseth, that in consideration of the widening of the road way of the first party which runs under the railroad bridge of the second party just East of Ilchester Station, said roadway having been widened for a distance 210 feet South of said bridge by the second party, and which widening the first party accepts as being satisfactory, the first party hereby

releases the second party from any further responsibility covering the construction or maintenance of said roadway whatsoever, and agrees that any agreement, either verbally or written, which may have been made in the past and that require the second party to assume any cost of maintenance or construction shall be null and void."

This first agreement was before the Court in the former case. The record in that case shows that it was offered by the plaintiff and was admitted over the objection of the defendant. It was contended before this Court in that case that the admission of the agreement constituted reversible error. In disposing of the exception the Court said: "While the agreement was subsequent to the alleged negligence of the appellant corporation, and did not reflect light upon the controversy between the parties, its admission did not injure or prejudice the defendant's case." In this case both agreements were offered by the defendant. The reason why neither agreement has anything to do with the subject-matter of the suit is evident from the language employed and the testimony offered by the defendant in relation to them.

Mr. Hess testified that the part of the county road referred to in the first agreement was under the railroad bridge; that work was done in connection with that agreement about a year afterwards; that the road under the bridge was 21 feet; the 210 feet back was on the Howard County side up to the old station; and that the agreement did not refer to the county road between the railroad bridge and the county bridge. He further testified that the first agreement referred to that part of the road commencing right underneath the railroad bridge, and running 210 feet in Howard County; that it had no relation with the road between the railroad abutment and the county bridge; that the second agreement was made a year afterwards, and related to the same stretch of road from the railroad bridge back into Howard County.

Both agreements were made after the death of Doctor Hill, and the last one after the judgment against the plaintiff had

been recovered by his widow.   The first provided that if the defendant would do certain things, it should be relieved from further expense, "in connection with the construction or maintenance of public roads in that vicinity;" and the second provided that in consideration of the defendant having widened the road under the railroad bridge, the plaintiff released it "from any further responsibility covering the construction or maintenance of *said roadway.*"

By no fair construction of these agreements, executed under the circumstances mentioned, can it be said that it was intended by the parties to release or affect in any manner the right of recovery on any claim which the plaintiff may have had against the defendant growing out of its prior defaults or negligence.   They do not purport to be executed with any such purpose, and to give the agreement such an effect would impute a meaning to the instruments not expressed therein and which the parties evidently never contemplated.

The nine prayers granted by the Court on behalf of the defendant placed its case fairly before the jury, and gave it the benefit of all the defenses to which it was entitled.   Finding no reversible errors in any of the rulings, the judgment will be affirmed.

*Judgment affirmed with costs.*